# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class PATRICK A. BATTLES**
**United States Army, Appellant**

ARMY 20140399

Headquarters, United States North Atlantic Treaty Organization (referred)
Headquarters, 21st Theater Sustainment Command (post-trial)
Joshua S. Shuey, Military Judge
Colonel Mark H. Sydenham, Staff Judge Advocate (pretrial)
Colonel Jonathan A. Kent, Staff Judge Advocate (post-trial)

For Appellant: Captain Joshua G. Grubaugh, JA (argued); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Amanda R. McNeil Williams, JA (on brief); Major Christopher D. Coleman, JA; Captain Joshua G. Grubaugh, JA (on supplemental brief and reply brief).

For Appellee: Major Anne C. Hsieh, JA (argued); Major A.G. Courie III, JA; Major Anne C. Hsieh, JA (on brief); Lieutenant Colonel A.G. Courie III, JA; Major Michael Korte, JA; Major Anne C. Hsieh, JA (on supplemental brief).

31 May 2017

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FEBBO, Judge:

A panel with enlisted representation, sitting as a general court-martial, convicted appellant, contrary to his pleas, of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [hereinafter UCMJ]. Appellant also pleaded guilty to attempted use and attempted distribution of 3,4-methylenedioxymethamphetamine (MDMA), as lesser-included offenses of Article

112a, UCMJ.[1] 10 U.S.C. § 880 (2012).  MDMA is commonly known as ecstasy.  The convening authority (CA) approved the adjudged sentence of a bad-conduct discharge, confinement for one year, and reduction to the grade of E-1.

We review this case under Article 66, UCMJ.  Appellant assigns eight errors.[2] Four of the assigned errors merit discussion, and one merits relief.  Below, we address whether: (1) the military judge erred when he failed to instruct on the *mens rea*[3] necessary to make appellant's sexual conduct criminal; (2) the military judge abused his discretion by admitting portions of Private First Class (PFC) LL's alleged journal; (3) the Staff Judge Advocate's (SJA) Recommendation (SJAR) to the CA contained an affirmative misstatement of the law that effectively precluded the appellant's opportunity to receive clemency; and (4) dilatory post-trial processing.

We have considered the matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).  While we do discuss the post-trial Article 39(a), UCMJ, session stemming from the Special Victims' Counsel's (SVC) behavior and opinion about PFC LL's credibility, we ultimately conclude appellant's *Grostefon* matters do not warrant relief.

## BACKGROUND

Appellant and PFC LL met each other in June 2012. They were assigned to the same unit at Wiesbaden Army Airfield (WAAF, now known as Lucius D. Clay

---

[1] Appellant asserts that the promulgating order incorrectly stated he was found guilty of two specifications of attempted use and distribution of MDMA.  However, a corrected copy of the promulgating order in the record of trial states appellant was found guilty of only one specification of attempted use and distribution of MDMA.

[2] In addition to the assigned errors discussed here, appellant asserts the following four assigned errors: (1) the evidence is factually and legally insufficient to sustain appellant's conviction for sexual assault; (2) the military judge abused his discretion when he denied the defense motion to admit evidence under Military Rule of Evidence [hereinafter Mil. R. Evid.] 412; (3) the inaccurate "one drink means a female cannot consent to sex standard espoused in SHARP [Sexual Harassment / Assault Response and Prevention] training" and the military judge's failure to instruct the members to disregard this training prevented appellant from getting a fair trial; and (4) the cumulative effect of the errors in this case denied appellant a fair trial.

[3] "*Mens rea*" is the Latin term for "guilty mind" and refers to "[t]he state of mind that the prosecution . . . must prove that a defendant had when committing a crime." *Black's Law Dictionary* 1134 (10th ed. 2014).

Kaserne) near Wiesbaden, Germany, and became close friends. They socialized and drank alcohol together, used illegal drugs together, and had the same circle of friends. Private LL considered appellant to be her best friend but she was not interested in him sexually.

On 31 August 2012, appellant, PFC LL, and another soldier went to the movies. Appellant and PFC LL left the movies and went out drinking and dancing at a dance club where PFC LL became intoxicated. In the early morning hours of 1 September 2012, appellant and PFC LL went back to her barracks room.

According to PFC LL, she did not remember much of the evening after leaving the bar/dance club. She did not remember taking off her clothes. She did, however, remember laying in her bed when appellant got on top of her and put his penis inside her vagina. She told appellant "no," "stop," "get off," and she did not want to have sex. She also tried to push him off of her. However, appellant did not stop until PFC LL started crying. After getting off her, appellant appeared angry and left her barracks room.

The next day appellant and PFC LL exchanged text messages:

Appellant at 1000: Morning (:

PFC LL at 1100: Battles. At what point during the night did I agree to have sex with you?

Appellant at 1100: Wtf?? [what the fuck]

PFC LL at 1121: Yeah that was my thoughts exactly.

Appellant at 1121: My bad! I really do apologize!

PFC LL at 1121: No.

Appellant at 1121: No what?

As PFC LL did not respond, the next evening appellant texted PFC LL to ask "Just wanted to know if we are still cool or what?" Private LL responded "I D[on't] K[now]."

Appellant and PFC LL remained friends until around November 2012 when she suspected he was telling people they had sex, and she became angry since she thought he was bragging about sex and was not being truthful about how that sex happened. She told other soldiers appellant sexually assaulted her. Later that month, appellant asked her "if someone else made you pregnant?" Private LL

3

responded "Whatever. You can go fuck yourself. Some friend you are. I am fucking done with you." Around this time, she told two other soldiers she was sexually assaulted.

In December 2012, PFC LL attended SHARP training. She informed a unit representative she had been sexually assaulted. The allegations were investigated by the U.S. Army Criminal Investigation Division (CID). Appellant gave a statement to a CID special agent (SA). Appellant told the SA he was drinking with PFC LL and she "was all over him" at the dance club. However, he did not remember anything later that evening and did not remember having sex with PFC LL. It was not until PFC LL texted him the next morning that he realized they had sex. He was surprised by the text and thought they must have been drunk when they had sex.

At trial, the issue of PFC LL's lack of consent was fully contested. Among other arguments, appellant asserted PFC LL consented to the sexual act, or in the alternative, fabricated the allegations out of revenge. The defense disputed the government's theory of the case through cross-examination of the government witnesses and presentation of soldiers who testified PFC LL was not credible. The defense also presented alternate theories to undermine the sexual assault allegations.

## LAW AND ANALYSIS

### A. Whether the Military Judge Erred in the Instructions to the Panel

Appellant was convicted of sexual assault by bodily harm. The elements for this violation of Article 120, UCMJ are: (1) that the accused committed a sexual act upon another person by (2) causing bodily harm to that other person. *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 45.a.(b)(1)(B). In appellant's case the sexual act—penetrating PFC LL's vulva with his penis—was also the bodily harm.

Appellant asserts, for the first time on appeal, the military judge erred in failing to instruct the panel on the *mens rea* necessary to make appellant's conduct criminal. The military judge instructed the panel that to convict appellant of sexual assault by bodily harm they had to be convinced beyond a reasonable doubt of the following:

> First, that on or about 1 September 2012, at or near Wiesbaden, Germany, the accused committed a sexual act upon [PFC LL], to wit: penetrating her vulva with his penis;

4

> Second, that the accused did so by causing bodily harm to [PFC LL], that is, that he penetrated her vulva with his penis without her consent; and
>
> Third, that the accused did so without the consent of [PFC LL].

The military judge's instruction mirrored the Military Judges' Benchbook and the statutory language of Article 120. *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook] para. 3-45-14 (10 Sep. 2014). Based on the government's charging decision, the military judge instructed the panel that proof of PFC LL's lack of consent was required for both the bodily harm and overall sexual act elements. The military judge instructed the panel to consider "all the surrounding circumstances" to determine whether PFC LL gave consent. The military judge also instructed the panel on appellant's potential defense of mistake of fact as to consent and told the panel to consider appellant's state of mind and belief as to PFC LL's consent. The panel was also instructed ignorance or mistake could not be based on the negligent failure to discover the true facts.

Appellant asserts the current instructions on the elements for sexual assault by bodily harm are insufficient after *Elonis v. United States,*[4] 135 S. Ct. 2001 (2015), *United States v. Gifford*, 75 M.J. 140 (C.A.A.F. 2016) (general order violation requires recklessness), and *United States v. Rapert*, 75 M.J. 164 (C.A.A.F. 2016) (wrongfulness as a *mens rea*). Specifically, appellant argues Article 120(b)(1)(B) itself fails to specify a *mens rea* for the material element of lack of consent. Consequently, the instruction for this offense necessarily fails to include a *mens rea* on the material element of lack of consent, and is thus insufficient to establish that appellant's conduct was unlawful. Therefore, appellant requests this court set aside the findings and sentence and grant appellant a new trial.

### 1. Forfeiture

At trial, appellant did not object to the instructions or request additional instructions concerning the specific *mens rea* required for sexual assault by causing bodily harm. In fact, the military judge specifically addressed the charged sexual assault by bodily harm as it related to the potential lesser-included offense of assault consummated by a battery:

> MJ: Okay. I just want to ensure, defense counsel, that with respect to assault consummated by a battery which normally would be considered a lesser included offense to this 120 bodily harm offense under a strict [*United States*

---

[4] Appellant's trial concluded before the Supreme Court decided *Elonis*.

> *v. Jones*, 68 M.J. 465 (C.A.A.F 2010)] kind of analysis, you don't believe that the evidence raises that in this case, do you?
>
> DC: No, we don't, Your Honor.
>
> MJ: And to the extent that it is, you waive it?
>
> DC: Correct, Your Honor.
>
> MJ: Okay, let's talk about the evidentiary instructions.

Rule for Courts-Martial [hereinafter R.C.M.] 920(f) states "[f]ailure to object to an instruction . . . before the members close to deliberate constitutes waiver of the objection in the absence of plain error." In other words, failure to object forfeits the issue absent plain error. *United States v. Ahern*, 76 M.J. 194 (C.A.A.F. 2017). Consistent with our superior court's holding in *United States v. Davis*, when an "accused fails to preserve the instructional error by an adequate objection or request, we test for plain error." 76 M.J.__, 2017 CAAF LEXIS 475 (C.A.A.F. 2017) (citing *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011)); *see also Henderson v. United States*, 133 S. Ct. 1121, 1126 (2013) (reaffirming the principle that any right may be forfeited by failing to timely assert it).

### 2. *Plain Error Analysis*

Under a plain error analysis, appellant has the burden of proving: "(1) an error was committed; (2) the error was plain, clear, or obvious; and (3) the error resulted in material prejudice to substantial rights." *United States v. Paige*, 67 M.J. 442, 449 (C.A.A.F. 2009) (quoting *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008). "Once [appellant] meets his burden of establishing plain error, the burden shifts to the Government to convince us that this constitutional error was harmless beyond a reasonable doubt." *Paige*, 67 M.J. at 449 (quoting *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005)). On the other hand, "[t]he failure to establish any one of the prongs is fatal to a plain error claim." *United States v. McClour,* 76 M.J. 23, 25 (C.A.A.F. 2017) (quoting *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006)).

As any error in this case was neither plain nor prejudicial we do not directly determine whether the instructions constituted error.

In considering whether an error is plain, we start by asking how well-settled the law is on this issue. Error is "plain" when it is "obvious" or "clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993). Then, we look to see how obvious the error was in the context of the trial. "When examining this prong, we

ask whether the error was so obvious 'in the context of the entire trial' that 'the military judge should be faulted for taking no action' even without an objection." *United States v. Gomez*, 76 M.J. 76, 81 (C.A.A.F. 2017) (citing *United States v. Burton*, 67 M.J. 150, 153 (C.A.A.F. 2009) (quoting *Maynard*, 66 M.J. at 245)); *see also United States v. Frady*, 456 U.S. 152, 163 (1982) (noting that error is clear if "the trial judge and prosecutor [would be] derelict in countenancing it, even absent the defendant's timely assistance in detecting it"). We do not find errors to be plain and obvious when the importance of the issue was not obvious at trial.

The third and final prong of the plain error test is prejudice. A finding or sentence of a court-martial "may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." UCMJ art. 59(a).

Appellant asserts the instruction as given was insufficient, error, and prejudicial for the following reasons. First, had appellant been able to argue his mistake of fact did not have to be reasonable, there is a reasonable probability he would have been acquitted. Second, his voluntary intoxication[5] may have been given more weight by the panel because he would not have been judged by the perspective of the reasonable sober person.

Our review of the record demonstrates appellant cannot meet this burden. Private LL did not remain silent and vocalized and animated her lack of consent. Private LL testified she realized appellant's penis was inside her vagina, and she specifically told him to stop and then pushed him. Appellant did not stop penetrating her until she started crying. Afterward, he left her room and looked angry. At the point PFC LL said "no, "stop," "get off," and that she did not want to have sex, appellant would have known the penetration of her vulva was without consent or acted in reckless disregard to any alleged consent. At trial, appellant argued "sexual intercourse does not turn off like a light switch" and "interrupting coitus is an odd thing" and does not happen right away. This court is not convinced by appellant's argument a person cannot stop immediately when any alleged consent is affirmatively withdrawn.

When considering appellant's other defenses presented at trial, including that perhaps someone other than appellant sexually assaulted PFC LL, we are further convinced that even if there was instructional error, it was harmless beyond a reasonable doubt.

---

[5] Generally, voluntary intoxication, whether caused by alcohol or drugs, is not a defense. R.C.M. 916(l)(2).

Here, appellant's subjective state of mind (the *mens rea*) was never at issue. While the military judge gave a mistake of fact as to consent instruction, in our review of the record we do not find *any* evidence, let alone "some" evidence, that appellant subjectively believed that PFC LL had consented to the sexual conduct at issue. Simply put, appellant's case was not focused on whether or not he acted negligently.

The CID agent testified at trial that appellant told him he was drunk and did not remember having sexual intercourse with PFC LL. Appellant never told the agent he thought PFC LL consented to the sexual act or sexual contact. Appellant told the SA he was drunk and did not remember having sexual intercourse with PFC LL. Similarly, during opening statements, defense counsel argued appellant did not even know or remember having sexual intercourse with PFC LL until she texted him the next morning. He was surprised and was the reason he responded by text, "Wtf??" If appellant could not even remember having sexual intercourse with PFC LL, he could not assert that he was not guilty of the offense because he had an innocent state of mind because he believed she was consenting.

Assuming arguendo it was error not to instruct on *mens rea*, we do not find any such error was obvious or clear under current law. Additionally, we find appellant has not met his burden of showing a material prejudice to a substantial right.

### B. *Admission of Private First Class LL's Journal*

Appellant asserts the military judge abused his discretion by admitting portions of PFC LL's journal, and then again, by allowing the government to introduce a redacted version as opposed to admitting the entirety of the entry.

Prior to trial, appellant filed a motion to exclude four handwritten pages from PFC LL's journal on the basis of hearsay and failing the Military Rule of Evidence [hereinafter Mil. R. Evid.] 403 balancing test. At trial, appellant specifically argued the prejudice consideration under Mil. R. Evid. 403 was high because CID only obtained the four pages rather than the rest of the notebook, which precluded appellant from admitting the remainder under the Mil. R. Evid. 106's rule of completeness.[6] During argument on the motion, the government offered the writings contained in the journal were admissible as evidence of PFC LL's then-existing mental, emotional, or physical condition pursuant to Mil. R. Evid. 803(3). The

---

[6] "Under the Military Rules of Evidence adopted in 1980, there are two distinct rules of completeness. Rule 106, the general rule of completeness . . . [and] Rule 304(h)(2), which applies when a confession or admission is introduced against an accused." *United States v. Rodriguez*, 56 M.J. 336, 339 (C.A.A.F. 2002).

government also contended the writings would be admissible non-hearsay as prior consistent statements pursuant to Mil. R. Evid. 801(d)(1)(B). The government went on to outline why the Mil. R. Evid. 403 balancing test tipped in favor of admission.

In opposition, appellant argued the government could not meet the foundational elements to prove these writings predated PFC LL's motive to fabricate. Appellant argued the court could not know if the writings were made on the dates listed on top of the pages, or whether PFC LL created these writings and falsely backdated them in order to make her sexual assault allegation appear more credible.

The military judge found the journal entries and dates were written on the days contained in the writings, and those writings preceded the alleged motive to fabricate. The military judge then addressed the lost evidence rule under R.C.M. 703(f)(2) by stating "we need to look at the lost evidence rule, it would seem, to determine, I think, whether or not you are unfairly prejudiced in some way by not having the rest of the story." The military judge heard evidence on how the pages came into CID's possession and why the rest of the notebook was not seized.

After taking evidence and hearing argument on a separate government motion to exclude evidence about a prior inconsistent statement by omission made by PFC LL to a friend, the military judge ruled on the two motions. He denied the government's motion to exclude PFC LL's alleged prior inconsistent statement and told appellant under what conditions that evidence might become available and admissible to him. He then denied the defense motion to exclude the journal excerpts, and told the government the evidence could be admissible as a prior consistent statement to refute claims of recent fabrication or improper motive, if the government could lay an adequate foundation at the time. With respect to the rule of completeness and lost evidence rule, the military judge found the journal excerpts stood on their own, and it would be "pure speculation at this point that the journal itself would have anything of any evidentiary value."

During trial PFC LL testified, and the defense cross-examined her regarding motive to fabricate. Afterward, the government moved for the admission of the journal entries. The military judge found the opening statement of appellant's defense counsel outlined the defense theory PFC LL fabricated her allegation, and during cross-examination of PFC LL they again implied she fabricated her allegation of sexual assault. The government offered a redacted portion of the exhibit, and the defense objected under the rule of completeness. The military judge heard argument and parsed out which statements could be redacted because they "implicate[] [Mil. R. Evid.] 412 and then also is not particularly relevant," and which portions "puts the rest of it in some context." This document was conditionally admitted. Prior to publishing this exhibit, appellant objected, and the military judge ruled:

> I find that under the rule of completeness it is not
> something that ought, in fairness, be considered
> contemporaneously with the rest of the writing.  And the
> only purpose for which the defense counsel seeks to have
> it included is to lay a foundation in which to enter other
> evidence which has very little probative value and
> significant risk of enflaming the panel into making
> assumptions that are improper in this case under [Mil. R.
> Evid.] 412.  So, even though this isn't itself [Mil. R.
> Evid.] 412 evidence, the fact is that to leave it in here
> would be to permit the introduction of evidence that is
> highly prejudicial and not particularly probative.

The redactions related to PFC LL's sexual activity with another person the day after the sexual assault.

A military judge's decision on whether to admit or exclude evidence is reviewed for an abuse of discretion.  *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015) (citation omitted).  "A military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect."  *Id.* (internal quotation marks and citations omitted); *see also United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011) ("Findings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed de novo.").  Our superior court has previously stated the abuse of discretion standard is strict, "calling for more than a mere difference of opinion.  The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (internal quotation marks and citations omitted).

The circumstances surrounding the destruction of the remainder of the notebook were fully litigated by the parties before the military judge ruled on admissibility of the redacted four pages of the journal.  Private LL testified she kept a notebook journal and the timeframe when she prepared the entries that were introduced into evidence.  It was not a journal she wrote in all the time, but it did include several entries and notes.  The defense cross-examined PFC LL, who explained she wrote the entry the day after the assault.  Her testimony was supported by the contemporaneous text message exchange between appellant and PFC LL the day after the assault.  Based on PFC LL's testimony, the date of the journal entry, and testimony from the CID special agent, the military judge concluded the journal entry was written before PFC LL allegedly had a motive to fabricate when appellant later spread rumors about them having sex.  This court finds PFC LL's inclusion of both her friendship with appellant and sensitive and personal information about sexual activity with another person further supports the pages were prepared around 2 September 2012.

Turning to the rule of completeness contained in Mil. R. Evid. 106, "when a writing . . . or part thereof is introduced . . . an adverse party may require that party . . . to introduce any other part or any other writing . . . which ought in fairness to be considered contemporaneously with it." R.C.M. 703(f)(2) states:

> [A] party is not entitled to the production of evidence which is destroyed, lost, or otherwise not subject to compulsory process. However, if such evidence is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings.

The military judge did not abuse his discretion in overruling appellant's objection to the journal entries being introduced by the government. We also find the military judge did not abuse his discretion by redacting portions of the journal. The redactions were reasonable since they included evidence that had limited relevance to the charges against appellant, and would ultimately allow the defense to enter other information that would improperly inflame the panel into making improper assumptions. Nor did the military judge abuse his discretion in allowing the redacted portions of the journal to be used as prior consistent statements to rebut an express or implied charge of recent fabrication by PFC LL.

*C. Post-Trial Article 39(a) Hearing on Special Victim Counsel Communications*

After conclusion of appellant's trial, an embarrassing and unnecessary sideshow unfolded.

The central figure in this drama is PFC LL's SVC—Captain (CPT) John Danenberger. While we will explain in more depth, CPT Danenberger essentially mislead various individuals about his whereabouts, missed a court hearing, and then tried to deflect blame by breaching his duties to his client by implying his client had been untruthful in her testimony.

While CPT Danenberger's lack of candor was the fuel for this conflagration and his breach of professional standards was the spark that set it ablaze, the resulting fire likely should have been quickly extinguished. Instead, a multi-month drama unfolded.

We address this issue not only because it is concerning, but also as appellant specifically asked us to address it. Appellant, in his *Grostefon* matters, asserts the military judge erred in not granting a new trial after conducting a post-trial Article 39(a), UCMJ, hearing concerning CPT Danenberger's opinion about PFC LL's

credibility and whether she committed perjury at trial. Appellant asserts the military judge erred in conducting an in camera review of documents and questioned the SVC ex parte at the hearing. Furthermore, appellant asserts he was prejudiced by the military judge's order sealing certain documents that he could have presented to the convening authority as part of his R.C.M. 1105/1106 matters.

However, as we will explain, after numerous post-trial Article 39(a), UCMJ, sessions, administrative investigations, and betrayals by CPT Danenberger of his client's confidences, it would turn out that all the sound and fury in the end signified no prejudice to appellant.

### 1. Where in the World is Captain Danenberger?

Captain Danenberger was appointed as PFC LL's SVC and met with his client a number of times prior to trial. On the day of a scheduled Mil. R. Evid. 412 hearing, CPT Danenberger failed to make an appearance to represent his client.

Captain Danenberger told the trial counsel and his client he would be unable to attend the Mil. R. Evid. 412 hearing because he had to attend mandatory SVC training in Washington, DC. This statement was false.

Captain Danenberger told the SVC program manager he could not attend the SVC training because he would be at the Mil. R. Evid. 412 hearing. This statement too was false.

In fact, CPT Danenberger was in Majorca, Spain, on leave with his family.

Captain Danenberger was ordered to return to Germany, but did not. He then appeared at the Mil. R. Evid. 412 hearing via telephone. After the hearing concluded, the trial continued while simultaneously—and not surprisingly—administrative and ethical investigations ensued.

### 2. Post-trial Allegations of Perjury

After appellant was convicted, an attorney from the Office of the Staff Judge Advocate contacted CPT Danenberger to determine if he continued to represent PFC LL during the post-trial process. Captain Danenberger's answer "implied that he was aware of perjury on the part of his client."[7]

This belief, it would turn out, was also false. While CPT Danenberger harbored beliefs about his client's credibility, he had no evidence of perjury or lies.

---

[7] Quoted remarks are from the military judge's findings of fact.

His assessment of his client's believability was an assessment of the same evidence that would come out at trial. The military judge suspected CPT Danenberger's disloyal disclosure about his client's credibility was an attempt to deflect attention away from his own misconduct. We agree with that assessment.

Captain Danenberger's disclosure triggered a series of events. The government notified the defense PFC LL's attorney thought PFC LL lacked candor during the court-martial. Appellant's defense counsel interviewed CPT Danenberger, filed a motion for a post-trial Article 39(a), UCMJ, session, requested that the military judge determine if PFC LL committed perjury at trial, and moved for a new trial. Defense counsel also filed a motion to compel the government to provide post-trial discovery of any communications between CPT Danenberger and PFC LL.

The trial court conducted a post-trial Article 39(a), UCMJ, hearing to attempt to unravel the mess. Private LL received another SVC. Captain Danenberger testified and invoked the attorney-client privilege on behalf of PFC LL multiple times when questioned by the government, defense, and the court. Captain Danenberger also testified that he was personally under investigation and invoked his Fifth Amendment right not to answer questions that might incriminate him.

Faced with the assertion of privilege, the military judge had to determine whether there was an exception to the privilege. The military judge determined there was "an unwritten exception" to the attorney-client privilege when there was "direct evidence of perjury."

We find the military judge's analysis to be unconvincing. Certainly there is an exception to the privilege for "future crimes" (e.g. a client will commit perjury). *See* Mil. R. Evid. 502. Under the military judge's reasoning, no person who has committed perjury could ever seek the confidential advice of an attorney. It strikes us as elementary that a person who has committed perjury can seek the advice of an attorney with the same confidentiality as one who may have committed other crimes. We find no support for the proposition that the attorney-client privilege may be breached whenever there is direct evidence of *past* perjury.

As the military judge found an unwritten exception to the attorney-client privilege, what happened next was an inquiry to determine whether the unwritten exception applied. As CPT Danenberger had not attended the trial, he did not have any actual knowledge of perjury. This fact might have ended the matter.

Instead, CPT Danenberger's supervising staff judge advocate directed him to review the trial transcripts to determine which testimony by his client he thought was untruthful. The CA issued CPT Danenberger a grant of immunity and order to testify. The military judge then questioned him about this review under oath in

camera. That is, an SJA directed CPT Danenberger to actively seek out information contrary to his client's interests and inform the military judge whether he *now* believed his client committed perjury.

In March 2015, the military judge issued a fifty-two-page opinion on the defense motion for post-trial relief based on the newly discovered evidence of the SVC's opinion about PFC LL's credibility. The opinion includes extensive research on a multitude of topics to include the scope of the SVC program, the attorney-client relationship between an SVC and a victim, and the purported unwritten exception to the attorney-client privilege.

The military judge ultimately determined appellant was not entitled to relief as CPT Danenberger did not in fact know of perjury or believe PFC LL committed perjury. The military judge concluded the SVC did not possess any "new or additional evidence which would substantially affect the legal sufficiency of any findings of guilty or of the sentence." He found the SVC "struggled to believe PFC LL's account of the assault in some manner." Captain Danenberger was also concerned about the different accounts PFC LL had made to others and his understanding (or apparent misunderstanding) of the evidence in the case. However, the military judge correctly concluded CPT Danenberger's opinion on the weight of the evidence was inadmissible 'human lie detector' testimony. *See generally United States v. Martin*, 75 M.J. 321 (C.A.A.F. 2016). The military judge found CPT Danenberger's opinion had minimal probative value and "may be based on his own presumptions, assumptions, and biases." The military judge concluded CPT Danenberger's "opinion, which is the nature of a hunch or conjecture and undoubtedly is influenced by his feelings about PFC LL and her lifestyle, is not evidence; certainly it is not admissible evidence which could affect the findings or sentence in this case."

It should go without saying SVCs are attorneys, possessing the same attorney-client privilege as in other similar and well-known attorney-client relationships. A court-martial has the same ability to pry into the confidential communications between PFC LL and CPT Danenberger as it would had PFC LL hired a civilian attorney to advise her and represent her interests. That is to say, based on these facts, none. While the SVC program was new at the time, SVCs operate under the same professional and privilege rules as other attorneys. *See generally* Army Reg. 27-26, Legal Services: Rules of Professional Conduct for Lawyers (1 May 1992). If it would have been unthinkable to subpoena and order a civilian attorney to review evidence to see if the client lied, question them under oath about whether and why the attorney believed his or her client, turnover the client notes, and allow the attorney of the person who assaulted the client to then review the material—it should have been equally unthinkable here. The same concerns and limitations would apply to a military attorney from the U.S. Army Trial Defense Service (TDS) that represent a witness at a court-martial.

14

Ultimately, whatever the propriety of the events, the result of the post-trial affair (at least for appellant and PFC LL) was a whole lot of nothing. Captain Danenberger was unaware of any actual perjury, and his personal opinion about the truth of his client's claims would have been impermissible human lie detector testimony. In the end, the military judge correctly concluded the SVC did not possess any independent evidence or testify about facts that supported any claim of perjury. Indeed, CPT Danenberger's personal opinion about his client was neither relevant nor admissible.

We conclude the military judge did not err in his post-trial rulings concerning CPT Danenberger or in his decision to seal portions of the record. While it may have been error to *create* the exhibits, it was not error to seal them once created. *See* R.C.M. 1103A. And, in any event, appellant's defense counsel was permitted to review the exhibits post-trial, and we can find absolutely no prejudice to appellant.

In explaining the several month delay in post-trial processing caused by post-trial hearing, resolving motions, and writing an extremely thorough opinion on the issues, the military judge described the post-trial proceedings as an "albatross." *See* Samuel Taylor Coleridge, *The Rime of the Ancient Mariner, in* Lyrical Ballads (1798). In our view, the post-trial proceedings are better described as a complete and unnecessary debacle all stemming from the initial deception and unprofessionalism of CPT John Danenberger.

### D. Error in Staff Judge Advocate's Addendum

Appellant asserts the addendum contained a misstatement of the law that effectively precluded appellant's opportunity to request clemency from the CA. We agree.

In his 22 April 2015 SJAR, the SJA recommended the convening authority approve the findings and sentence as adjudged. On 4 May 2015, appellant submitted post-trial matters pursuant to R.C.M. 1105 and 1106 and requested the CA grant clemency in the form of either approving a post-trial administrative discharge or disapproving the findings for the sexual assault charge.

In the addendum to the SJAR, the SJA informed the CA of unreasonable post-trial delay and the SJA recommended the CA grant thirty (30) days of confinement credit for the delay. However, citing UCMJ art. 60(c)(4)(a), the SJA informed the CA he was *prohibited* from disapproving, in whole or in part, a sentence to confinement arising from a conviction for an Article 120, UCMJ offense. (emphasis added). The CA subsequently approved the adjudged findings of guilty and sentence. As the SJA only provided this legal advice in the addendum, appellant did not waive or forfeit this error by failing to raise the matter to the convening authority. *See* R.C.M. 1106(f)(6).

15

We review unforfeited errors in post-trial processing de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). The SJA improperly advised the CA that clemency in appellant's case was not permissible. R.C.M. 1107(d)(1)(B) (2016 ed.) now prohibits the convening authority in most instances from taking any action to "disapprove, commute, or suspend in whole or in part that portion of the sentence" which includes confinement for more than six months or a punitive discharge. However, this limitation to the CA's discretion as to action on the sentence does not apply where "at least one offense resulting in a finding of guilty occurred prior to 24 June 2014," in which case the prior version of R.C.M. 1107 applies. *See* R.C.M. 1107, note (2016 ed.)

Given that appellant's offenses occurred prior to 24 June 2014, the CA *did* have discretion to disapprove some or all of the adjudged sentence to confinement. *See* R.C.M. 1107(d)(1) (2012 ed.). The government argues the SJA's misstatement of the law was only made when addressing the alleged error in post-trial processing and there is no showing of actual prejudice.

However, the insertion of the misstatement of the law (even as it related to only one legal error) made the addendum confusing and inaccurate. Appellant has made a colorable showing of prejudice. We will not speculate as to what action the convening authority would have taken in this case when he was not provided the full range of options legally available to him in assessing appellant's clemency request. We therefore grant relief of a new addendum and initial action as directed in our decretal paragraph.

### E. Dilatory Post-Trial Delay

The CA took action 385 days after the conclusion of appellant's court-martial. The record in this case consists of nine volumes and the trial transcript is 1171 pages. Of that delay, approximately twenty-one days were attributable to the defense, 240 days attributable to the government, and 124 days attributable the trial court's post-trial proceedings.

The government finished the initial 1045-page trial transcript in eighty-two days. Afterward, the defense counsel requested the military judge delay authenticating the record of trial in order to file a motion for a post-trial session.

As described above, the military judge addressed several post-trial motions, conducted a post-trial 39(a) hearing, and drafted a fifty-two-page opinion on the defense motion for post-trial relief. The record of trial includes the military judge's reasonable explanation for the delays in the post-trial proceedings.

We do not find a due process violation or unreasonable post-trial delay by the government. In the addendum, the SJA informed the CA there was unreasonable

post-trial delay, and the SJA recommended the CA grant thirty days of confinement clemency for the delay.  Since the court is returning the record of trial for a new addendum and action, the CA may consider the appropriateness of the sentence in light of any unjustified dilatory post-trial processing.  *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002).

## CONCLUSION

The convening authority's initial action, dated 2 June 2015, is set aside.  The record of trial is returned to The Judge Advocate General for a new addendum and initial action by the same or a different convening authority in accordance with Article 60(c)-(e), UCMJ.

Senior Judge MULLIGAN concurs.

Judge WOLFE, concurring:

In the first part of this opinion we address an issue of *mens rea* in sexual assault cases where the allegation asserts that the bodily harm in a sexual assault specification is the penetrative act itself.

Ultimately, we do not address appellant's allegation of error as assigned, because even if error, as there was no objection to the instructions, and any error did not amount to plain error.  I agree with that analysis.  I write separately to express my opinion the allegation of error in this case is a non-trivial issue.

Military justice practice has appeared to have taken an expansive view of *Elonis*.  This view may reflect that many UCMJ offenses—such as orders violations and offenses under Articles 133 and 134, UCMJ—are less defined than typical civilian offenses.  It may also reflect that most of the offenses have not been substantially updated since the passage of the UCMJ (or often since the Articles of War).  The "general rethinking of traditional *mens rea* analysis" that occupied the federal courts in the 1970s and 1980s did not result in a recodification of criminal offenses in the UCMJ.  *United States v. Bailey*, 444 U.S. 394, 403, 100 S. Ct. 624, 631 (1980).

Our superior court recently cited *Elonis* in its rejection of our analysis that Article 134, UCMJ, (disorders and neglects) implicitly established a *mens rea* of negligence.  *United States v. Tucker*, 76 M.J. __, 2017 CAAF LEXIS ___ (C.A.A.F. 2017);  *see also Haverty*, 76 M.J. at 201.

There is an argument that the reach of *Elonis* should be limited because of the Supreme Court's decision in *Parker v. Levy*, 417 U.S. 733 (1974), where the Court acknowledged the military criminal code includes both crimes and what would

normally be considered administrative actions.  The military is "often employer, landlord, provisioner, and lawgiver rolled into one."  *Parker v. Levy*, 417 U.S. 733, 751, 94 S. Ct. 2547, 2559 (1974).  The UCMJ, the Court stated, "cannot be equated to a civilian criminal code."  *Id.*  As such, so goes the argument, the application of *Elonis* is limited within the military context.

That argument is strongest when applied to military specific offenses, but perhaps weakest when applied to common law-type crimes such as battery and sexual assault.  Accordingly, and given that our superior court has unblinkingly applied *Elonis* to even military specific offenses, it may be wise to assume that *Elonis* is fully applicable to the offense in question here: sexual assault by bodily harm.

On appeal the government argues that, similar to assault and battery under Article 128, UCMJ, Congress intended sexual assault by bodily harm to be a general intent crime.  If we ever reach the issue, I would note that the UCMJ treats issues of "bodily harm" much differently than federal civilian statutes.  *Compare* Article 128, UCMJ, *with* 18 U.S.C. § 113(b).  In applying *Elonis* to a general intent offense such as assault consummated by battery, it is far easier to separate innocent from wrongful conduct when the statute uses terms such as "serious bodily injury" or "substantial bodily injury."  *See* 18 U.S.C. § 113(b).  When the issue of bodily harm is instead "any offensive touching no matter how slight" an errant hug is included in the criminal battery statute.  *See* UCMJ art. 128.

Of course, not every unwanted touching is a battery.  The UCMJ separates out unwanted but non-criminal conduct through the application of defenses.  When raised, the government must disprove beyond a reasonable doubt the defenses such as accident and mistake of fact.  However, and critically, these defenses do not apply if the accused was *negligent*.  This conundrum raises the question of whether *Elonis* reaches into the *mens rea* of defenses and, if so, to what effect.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court