# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, CELTNIEKS, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E2 ANTHONY M. BODOH**
**United States Army, Appellant**

ARMY 20150218

Headquarters, 1st Cavalry Division
Wade N. Faulkner, Military Judge
Lieutenant Colonel Alison C. Martin, Staff Judge Advocate (pretrial)
Lieutenant Colonel Oren H. McKnelly, Staff Judge Advocate (post-trial)

For Appellant:  Captain Joshua B. Fix, JA (argued); Lieutenant Colonel Melissa R. Covolesky, JA; Captain Katherine L. DePaul, JA; Captain Joshua B. Fix, JA (on brief); Lieutenant Colonel Tiffany M. Chapman, JA; Captain Bryan A. Osterhage, JA; Captain Heather M. Martin, JA; Captain Joshua B. Fix, JA (on reply brief).

For Appellee:  Captain Cassandra M. Resposo, JA (argued); Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Cormac M. Smith, JA; Captain Cassandra M. Resposo, JA (on brief).

16 February 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

A panel of officers sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual assault and one specification of assault consummated by battery in violation of Articles 120 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 928 (2012 & Supp. I 2014).  The panel sentenced appellant to a bad-conduct discharge, confinement for five years, forfeiture of $1,546.80 per month for sixty months, and reduction to the grade of E-1.  The military judge credited appellant with 277 days towards his sentence to confinement.  The convening authority approved the adjudged sentence.

This case is before us for review pursuant to Article 66, UCMJ.  On appeal appellant assigns five errors, two of which warrant discussion but no relief.  First, appellant alleges the military judge abused his discretion when he denied the defense

motion to dismiss for violation of Rule for Courts-Martial [hereinafter R.C.M.] 707. Second, appellant alleges the military judge erred when instructing the panel on the *mens rea* required for the charged sexual assault. Appellant personally raised two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which we reviewed and find warrant neither discussion nor relief.

## BACKGROUND

On 24 June 2014, appellant was placed in pretrial confinement for sexually assaulting the spouse of another soldier. On 18 July 2014, multiple charges were preferred against appellant, including a charge of sexual assault by bodily harm in violation of Article 120, UCMJ. A pretrial investigation pursuant to Article 32, UCMJ, was originally scheduled for 7 August 2014. Trial defense counsel requested a fourteen-day delay, which was granted by the Article 32, UCMJ, investigating officer (IO). The IO conducted the pretrial investigation on 21 August 2014. On 23 October 2014, the charges were referred to a general court-martial and received by the military judge. On 24 November 2014, appellant was arraigned. The period of delay from the military judge's receipt of the referred charges until arraignment was thirty-two days.

Forty-three days later, on 7 January 2015, the charges against appellant were withdrawn by the 1st Cavalry Division (Rear) (Provisional) convening authority [hereinafter "provisional convening authority"], and a transfer request was sent to the 1st Cavalry Division convening authority [hereinafter "division convening authority"].[1] In the transfer request, the provisional convening authority excluded the delay under R.C.M. 707(c) between the time the military judge received the referred charges—23 October 2014—and the eventual date of re-referral of the same charges by the division convening authority. On 9 January 2015, the division convening authority accepted the transferred charges and excluded the same period of delay as the provisional convening authority. The same day, the charges were re-referred to a general court-martial and received by the military judge. The period of delay the convening authorities excluded was seventy-eight days.

On 12 January 2015, appellant was arraigned on the re-referred charges. The period of delay from the military judge's receipt of the re-referred charges until arraignment was three days. The sum total of days between the imposition of restraint and arraignment on the re-referred charges was 202 days.

At trial, the military judge engaged in the following discussion with counsel about panel instructions:

> [MJ:] So I intend to give the following instructions. I'll give the elements of the offenses. With respect to the sexual assault offense, I'm going to give note 2, note 3,

---

[1] The 1st Cavalry Division (Rear) (Provisional) was disestablished shortly thereafter.

2

note 8, and then notes 13, mistake of fact as to consent in cases involving bodily harm, and note 14, voluntary intoxication and mistake of fact as to consent in cases involving bodily harm.

. . . .

Does either side object to those instructions or request additional instructions?

After the government proposed additional instructions regarding false exculpatory statements and variance, the military judge asked the defense for their position.

[The civilian defense counsel conferred with the defense counsel.]

DC: No objection to variance, Your Honor.

MJ: No objection? You said no objection?

CDC: No objection, Your Honor.

DC: Yes, Your Honor. Apologies.

MJ: Okay. All right. I'll give that as it relates to that one specification.

In response, the government advocated for an expanded application of the variance instruction. The military judged, however, agreed with defense counsel's objection to the expanded application and limited the variance instruction to one specification.

[MJ:] Anything else, government?

ATC: I don't believe so, Your Honor.

MJ: Defense?

DC: Your Honor, I believe you did say for the Article 120 that consent and mistake of fact as to consent?

MJ: I did.

DC: Thank you, Your Honor. Nothing additional, Your Honor.

MJ: Okay.

CDC:  I have one more, Your Honor.  Did you say you're going to give spillover instructions?

MJ:  I didn't.

CDC:  I'd like to have it given, if it's possible, especially as to the assault charges.

MJ:  Okay.  I'll give spillover.

. . . .

[MJ:]  Anything further, defense?

DC:  Nothing additional, Your Honor.

The military judge then promised to draft and email the proposed instructions to counsel for review the same evening.  The next morning, the military judge continued the discussion with counsel as follows:

MJ:  And my instructions have been marked as Appellate Exhibit LII.  I emailed them to both sides last night.  This morning, prior to trial, I conducted an R.C.M. 802 session, present at which were both trial counsel, both defense counsel, and myself.  The defense counsel had some minor corrections that I have made to the findings worksheet.

Any objection from either side to the instructions?

ATC:  No, Your Honor.

CDC:  No, Your Honor.

After government and defense counsel disclaimed any objection to the proposed instructions, the military judge provided the instructions to the panel before their deliberation on findings.  At the conclusion of their deliberation, the panel found appellant guilty, *inter alia*, of sexual assault by bodily harm.

## LAW AND DISCUSSION

### A.  *Exclusion of Time from 120-Day Period under R.C.M. 707.*

In a case involving a speedy-trial claim under R.C.M. 707, the ultimate conclusion whether an accused received a speedy trial is a legal question that is reviewed de novo.  *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003) (citing *United States v. Doty*, 51 M.J. 464, 465 (C.A.A.F. 1999)).  In our review, a "military judge's findings of fact are given 'substantial deference and will be reversed only

4

for clear error.'" *Doty*, 51 M.J. at 465 (quoting *United States v. Taylor*, 487 U.S. 326, 337 (1988)). However, "[t]he interpretation of UCMJ and R.C.M. provisions and the military judge's compliance with them are questions of law, which we review de novo." *United States v. St. Blanc*, 70 M.J. 424, 427 (C.A.A.F. 2012) (italics omitted).

As mandated by R.C.M. 707, "[i]t is incumbent upon the government to arraign the accused within 120 days after the earlier of preferral of charges, the imposition of restraint, or entry on active duty." *United States v. Leahr*, 73 M.J. 364, 367 (C.A.A.F. 2014) (citing R.C.M. 707(a)). Where charges are dismissed, "'a new 120-day time period under this rule shall begin on the date of dismissal.'" *Id.* (quoting R.C.M. 707(b)(3)(A)). "If charges are merely withdrawn and not subsequently dismissed, however, the R.C.M. 707 'speedy-trial clock continues to run.'" *Id.* (quoting *United States v. Britton*, 26 M.J. 24, 26 (C.M.A. 1988)). The remedy for failing to arraign an accused within the 120-day period is dismissal of the charges, either with or without prejudice. *See* R.C.M. 707(d) ("A failure to comply with this rule will result in dismissal of the affected charges . . . . Dismissal will be with or without prejudice to the government's right to reinstitute court-martial proceedings against the accused for the same offense at a later date.").

The calculation of days against the 120-day period is not a simple addition of consecutive calendar days between preferral or restraint and arraignment. Instead, the procedural rules automatically exclude specific periods of time from the 120-day calculation. *See* R.C.M. 707(c) ("All periods of time during which appellate courts have issued stays in the proceedings, or the accused is absent without authority, or the accused is hospitalized due to incompetence, or is otherwise in the custody of the Attorney General, shall be excluded when determining whether the period in [R.C.M. 707(a)] has run."). The rules also grant broad authority to the convening authority and the military judge to approve pretrial delays, which "shall be similarly excluded" from the 120-day time period. R.C.M. 707(c); *see also* R.C.M. 707(c) discussion ("The decision to grant or deny a reasonable delay is a matter within the sole discretion of the convening authority or a military judge").

Accordingly, "[a]ll pretrial delays approved by authorized personnel are excludable unless the decision to approve the delay was an abuse of discretion." *United States v. Torres*, ARMY 20111168, 2014 CCA LEXIS 180, at *6 (Army Ct. Crim. App. 19 Mar. 2014) (mem. op.) (citing *United States v. Lazauskas*, 62 M.J. 39, 41 (C.A.A.F. 2005), and R.C.M. 707(c)). It does not matter which party is responsible for the delay. *Lazauskas*, 62 M.J. at 41. However, "[t]here must be 'good cause' for the delay and the length of time requested must be 'reasonable' based on the facts and circumstances of each case." *Torres*, 2014 CCA LEXIS at *6 (quoting *United States v. Thompson*, 46 M.J. 472, 475 (C.A.A.F. 1997)). "In sum, when this court reviews a military judge's denial of a motion for violation of speedy trial pursuant to R.C.M. 707, we must answer two questions: (1) was the delay

granted by a person authorized to grant the delay; and (2) was the decision to grant the delay an abuse of discretion." *Id.*

Regarding the first question, we must consider the timing of the delay. "Prior to referral, all requests for pretrial delay, together with supporting reasons, will be submitted to the convening authority . . . ." R.C.M. 707(c)(1). The convening authority may also delegate the authority to grant continuances to an Article 32 investigating officer. R.C.M. 707(c)(1) discussion. "After referral, such requests for pretrial delay will be submitted to the military judge for resolution." R.C.M. 707(c)(1). "Any period of delay from the judge's receipt of the referred charges until arraignment is considered pretrial delay approved by the judge per RCM 707(c), unless the judge specifies to the contrary." Rules of Practice Before Army Courts-Martial [hereinafter Rule of Court] 1.1 (1 Nov. 2013).[2]

Regarding the second question, we must consider the reason for the delay to determine whether the authorized officer abused his or her discretion. "An abuse of discretion occurs when either there was not good cause for granting the delay, or the amount of delay granted was unreasonable under the facts and circumstances of the case." *Torres*, 2014 CCA LEXIS at *6-7 (citing *Thompson*, 46 M.J. at 475).

In this case, the military judge made the following findings of fact and conclusions of law when denying the defense motion to dismiss:

> The accused was arraigned 153 days after being placed into pretrial confinement. Of those days, *14 are excluded* based on the Defense request for delay in the Article 32, and *32 days are excluded* under Rule 1.1 of the Rules of Practice. Accounting for time excluded under RCM 707(c), the accused was arraigned 107 days after being placed in pretrial confinement. There is therefore no violation of the RCM 707 120-day clock in this case. On 7 January 2015, the charges were withdrawn and referred by a different [convening authority] 2 days later. Adding those two additional days to the 107 days for the withdrawal and referral under a new [convening authority], and *excluding the days between 9 January 2015 and 12 January 2015*, the day the accused was arraigned

---

[2] Pursuant to R.C.M. 108, "The Judge Advocate General . . . may make rules of court not inconsistent with these rules for the conduct of court-martial proceedings." In turn, "The Judge Advocate General authorize[d] the Chief Trial Judge under RCM 108 to promulgate local or general rules of court." Army Reg. 27-10, Legal Services: Military Justice, para. 7-8 (3 Oct. 2011). "We have previously found Rule of Court 1.1 is not inconsistent with R.C.M. 707(c)(1)." *United States v. Hawkins*, 75 M.J. 640, 641 (Army Ct. Crim. App. 2016) (citation omitted).

again, the accused was arraigned 109 days after being placed into pretrial confinement. There is therefore no violation of the RCM 707 120-day clock in this case.

(emphasis added). The military judge's findings of fact were based on a stipulated timeline jointly signed by appellant, defense counsel, and the government. Since the parties stipulated to a chronology of pretrial events, the military judge's adoption of the chronology for his findings of fact was not clearly erroneous. For our de novo review of the legal questions involved, we similarly find a sufficient amount of time was excluded from the 120-day period as properly-approved delay that the government did not violate the speedy trial requirements of R.C.M. 707. Therefore, the military judge did not err when he denied the defense motion to dismiss.

### 1. *Was the delay granted by a person authorized to grant the delay?*

Appellant does not dispute that the IO was a person authorized to grant the fourteen-day delay prior to the Article 32 hearing. The IO granted the delay under authority delegated from the provisional convening authority and before the charges were referred to a military judge. Although the military judge when ruling on the motion to dismiss purported to exclude this same period of delay, the practical effect of the military judge's duplication was to recognize and ratify the delay already approved by the IO, a person authorized to grant the delay.

The thirty-two day delay from the referral of charges on 23 October 2014 until arraignment on 24 November 2014 was excluded by the military judge by operation of Rule of Court 1.1. Pursuant to Rule of Court 1.1, the military judge exercised his authority under R.C.M. 707(c) to exclude the thirty-two-day delay between receipt of charges and arraignment because he did not specify to the contrary. Addressing below whether the military judge abused his discretion, it is clear from the plain text of R.C.M. 707(c) that the military judge was a person authorized to exclude delay post-referral. The same operation of Rule of Court 1.1 supports the military judge's exclusion of a three-day delay from the re-referral of charges on 9 January 2015 until arraignment on 12 January 2015, which he expressly ratified in his ruling on the motion to dismiss.

### 2. *Was the decision to grant the delay an abuse of discretion?*

Appellant does not challenge the delay approved by the IO as an abuse of discretion. The IO had good cause to grant appellant's delay (i.e., to accommodate a defense request), and the length of time (i.e., fourteen days) was not unreasonable. Similarly, the military judge did not abuse his discretion when excluding the two periods of post-referral delay by operation of Rule of Court 1.1. First, the military judge had good cause to permit the normal operation of Rule of Court 1.1 because the reason for the delay was to accommodate civilian defense counsel's participation in the trial scheduling process. Second, the amount of post-referral delay under Rule of Court 1.1 (i.e., thirty-five days) was reasonable under the circumstances of this

case. The military judge took an active role in prompting civilian defense counsel to comply with established docketing procedures to ensure the length of delay did not become unreasonable, intervening after twelve days before receiving civilian defense counsel's docketing request eight days later.[3] Therefore, the military judge did not abuse his discretion by permitting the normal operation of Rule of Court 1.1.

*3. Periods of time otherwise excluded from the R.C.M. 707 speedy trial clock.*

During the forty-three days between arraignment on 24 November 2014 and the withdrawal of charges on 7 January 2015, the R.C.M. 707 speedy-trial clock was tolled. *See Thompson*, 46 M.J. at 474 ("Except for certain 'events which affect time periods' that are specified in RCM 707(b)(3), this 120-day clock is tolled only by arraignment of an accused at a court-martial."); R.C.M. 707(b)(1).

Appellant's challenge of the convening authority's ability to approve a delay retroactively, sua sponte, and ex parte presumes the period of time during which the 120-day clock was tolled was invalidated when the convening authority withdrew the referred charges. Although appellant relies on dicta from our superior court to bolster this claim on this matter of first impression, this reliance is misplaced.

In *United States v. Britton*, the Court of Military Appeals (CMA) considered whether withdrawal and re-preferral of charges had the same legal consequence (of resetting the 120-day speedy-trial clock) as dismissal and re-preferral of charges. 26 M.J. 24, 24 (C.M.A. 1988). Importantly, neither the CMA nor the lower Air Force Court of Military Review (AFCMR) purported to address all the collateral issues in the case. "Without addressing the issue of waiver the [AFCMR] dismissed the earlier charges, holding that withdrawal was not a condition under R.C.M. 707(b) which would cause the speedy-trial clock to start anew upon the reinstatement of the charges" *Id.* at 25. Without delineating the number of days tolled after the first arraignment, the CMA similarly held that "[u]nless a convening authority acts to dismiss the withdrawn charges, R.C.M. 707(b)(2) does not apply, and the speedy-trial clock continues to run." *Id.* at 26. Whether the speedy-trial clock continues to run absent dismissal of charges, is a different question than whether properly-excluded time (e.g., post-arraignment, during unauthorized absence or hospitalization) is permanently invalidated by withdrawing charges.

In *United States v. Leahr*, our superior court considered: (1) whether the military judge erred in denying a defense motion to dismiss for violation of an appellant's right to speedy trial under R.C.M. 707; and (2) whether the government's withdrawal and re-referral of charges was for an improper reason in violation of R.C.M. 604(b). 73 M.J. 364, 365 (C.A.A.F. 2014). The appellant argued the R.C.M. 707 clock continued to run from the date the original charges were preferred,

---

[3] In the electronic docketing request, civilian defense counsel requested a trial date of 23 March 2015, one day before appellant's trial on the merits actually began.

and the arraignment that tolled the R.C.M. 707 clock was "vitiated" by the withdrawal of charges. *Id.* at 367. Our superior court ultimately concluded the appellant's "right to a speedy trial under [R.C.M.] 707 was not violated because [the] original charges were dismissed" and "the dismissal and re-referral of the charges to another court-martial did not violate R.C.M. 604(b) because the dismissal was for a proper reason." *Id.* Notwithstanding its holding, the court surmised that if the convening authority's action amounted to a withdrawal only, the speedy-trial clock would not have reset and the 190-day period between the initial preferral and the final arraignment would violate R.C.M. 707. *Id.* (citing *Britton*, 26 M.J. at 26).

It seems clear that our superior court did not intend to establish a procedural rule for vitiating previously-tolled periods of delay in the background section in *Britton* or in a hypothetical in *Leahr*. Moreover, we are reluctant to string dicta from two cases, twenty-six years apart, to establish binding precedent that places previously-tolled periods of time beyond the reach of subsequent military judges and convening authorities whenever charges are properly withdrawn post-arraignment. We are particularly hesitant when the text of R.C.M. 707 does not require such an interpretation, but does require as the remedy dismissal of charges for any violation. From the context of R.C.M. 707, the President, in his rule-making authority, seems to have contemplated and authorized two categories of time to be exempt from the 120-day clock: (1) delay excluded by the proper exercise of discretion from an authorized officer; and (2) delay resulting from a qualifying event. Appellant's interpretation would create a third category of time in which properly excluded time would move beyond the reach of military judges and convening authorities after any post-arraignment withdrawal of charges. If our superior court intended to create a new rule not found in the text of R.C.M. 707, it would have done so explicitly in a case where the matter of previously-tolled delay was at issue. Therefore, we decline to adopt such a rule in this instance.

### 4. *The convening authorities excluded delay imperfectly but effectively.*

Even if the previously-tolled period of delay was vitiated by the subsequent withdrawal of charges, the convening authorities' potentially imperfect exclusions of delay were still effective. First, both convening authorities were personnel authorized under R.C.M. 707(c) to exclude periods of delay. By withdrawing the charges from the court-martial under R.C.M. 604(a), the decision to exclude reasonable delay returned to the sole discretion of the convening authority. Before the charges were transferred, the provisional convening authority exercised his authority to exclude delay. After the charges were transferred, the division convening authority exercised his authority to exclude the same period of delay.

Second, the convening authorities did not abuse their discretion when excluding the seventy-eight days from the military judge's receipt of the referred charges until the military judge's receipt of the re-referred charges. They had good cause to exclude the delay that resulted from the disestablishment of 1st Cavalry

9

Division (Rear) (Provisional). Moreover, the amount of the delay was reasonable as it essentially covered the same time that had been properly excluded by the military judge under Rule of Court 1.1 or tolled by operation of R.C.M. 707(b)(1). But for the disestablishment of the division, the time the convening authorities acted on would have remained properly-excluded delay. At least with respect to the division convening authority, the excluded delay was not open-ended because the period of delay was terminated the same day by his re-referral of the same charges.

In addition, even assuming the actions of the convening authorities were truly ex parte (as opposed to merely sua sponte), the ex parte nature of their actions, while discouraged, did not rise to an abuse of discretion. The discussion section of R.C.M. 707 states: "Pretrial delays *should* not be granted ex parte, and *when practicable*, the decision granting the delay, together with supporting reasons and the dates covering the delay, *should* be reduced to writing." R.C.M. 707(c)(1) discussion (emphasis added). The discussion section, however, is non-binding and, under a plain reading of its text, advisory. *See Willenbring v. Neurauter*, 48 M.J. 152, 168 (C.A.A.F. 1998) (explaining the "non-binding" nature of the discussion sections within the Rules for Courts-Martial, "which are not part of the Manual and . . . do not contain official rules or policy").

Furthermore, there is no prohibition or advisement against excluding delay retroactively or sua sponte. Notably, Rule of Court 1.1 serves to exclude delay both retroactively and sua sponte, which we have previously found compliant with R.C.M. 707. *Hawkins*, 75 M.J. at 641. Here, there was a practical reason for the convening authorities to exclude the delay retroactively and sua sponte. Before the withdrawal of charges, the same period of time was already excluded. But for the convening authorities' action of transferring the case, the effectiveness of the previously-excluded delay would not be in question. Also, at the time the charges were first referred, there was no reason to believe the trial could not be completed before the disestablishment of the division.

In sum, even if the previously-tolled period of time was invalidated by the subsequent withdrawal of charges, the convening authorities effectively excluded the same period of delay in the proper exercise of their discretion. Accordingly, we find no violation of appellant's speedy-trial rights under R.C.M. 707.

*B.* Mens Rea *for Article 120(b)(1)(B), UCMJ.*

The offense of sexual assault by bodily harm contains two elements under Article 120, UCMJ: (1) that the accused committed a sexual act upon another person by (2) causing bodily harm to that other person. *Manual for Courts-Martial, United States* (2012 ed.), pt. IV, ¶ 45.a.(b)(1)(B). In appellant's case the charged sexual act—penetrating the victim's vulva, anus, and mouth with his penis—was also the bodily harm.

10

At trial, the military judge instructed the panel that, to convict appellant of sexual assault by bodily harm, they had to be convinced beyond a reasonable doubt of the following:

> One, that at Fort Hood, Texas, on or about 22 June 2014, the accused committed sexual acts upon [the victim], to wit: penetrating her vulva, anus, and mouth with his penis; two, that the accused did so by causing bodily harm to [the victim], to wit: penetrating her vulva, anus, and mouth with his penis; and three, that the accused did so without the consent of [the victim].

These instructions mirrored the template in the Military Judges' Benchbook and the statutory language of Article 120, UCMJ. *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3-45-14 (10 Sept. 2014). Based on the government's charging decision, the military judge explained to the panel that proof of the victim's lack of consent was required for both the sexual act and bodily harm elements. The panel was told to consider "[a]ll the surrounding circumstances" to determine whether the victim gave consent. Furthermore, the military judge provided an instruction concerning the defense of mistake of fact as to consent, and told the panel to consider appellant's state of mind and the reasonableness of his belief about the victim's consent.

For the first time on appeal, appellant argues the military judge erred by instructing the panel that a negligent *mens rea* was sufficient to make his otherwise lawful conduct criminal. Appellant claims, after *Elonis v. United States*, 135 S. Ct. 2001 (2015), and *United States v. Gifford*, 75 M.J. 140 (C.A.A.F. 2016), the minimal *mens rea* to separate wrongful from otherwise innocent conduct is recklessness.

What *mens rea* applies to an offense is a question of law that we review de novo. *Gifford*, 75 M.J. at 142. Similarly, we review de novo the legal correctness of the instructions given by the military judge. *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014) (citations omitted). "Failure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes [forfeiture] of the objection in the absence of plain error." R.C.M. 920(f); *see United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (clarifying the misuse of the term "waiver" in the procedural rules when the term "forfeiture" was actually intended). When forfeited at trial, we review for plain error. *Payne*, 73 M.J. at 22-23 (citing *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013)).

"Under a plain error analysis, the accused 'has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.'" *Tunstall*, 72 M.J. at 193-94 (quoting *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011)). "Once [appellant] meets his burden of establishing plain error, the burden shifts to the

Government to convince us that this constitutional error was harmless beyond a reasonable doubt." *United States v. Paige*, 67 M.J. 442, 449 (quoting *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005)). On the other hand, "[t]he failure to establish any one of the prongs is fatal to a plain error claim." *United States v. McClour*, 76 M.J. 23, 25 (C.A.A.F. 2017) (quoting *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006)).

### 1. Affirmative waiver of instructional error.

There is a subtle but consequential difference between counsel *failing* to object and counsel *choosing* not to object. Here, defense counsel made the decision not to object to the proposed instructions and affirmatively stated their choice to the military judge. This decision came after defense counsel helped craft the instructions by proposing additional instructions and limiting the instructions requested by the government. Defense counsel also received a copy of the proposed instructions the night before and discussed the matter in-chambers the following day. By inattention or otherwise, counsel may fail to consider a potential issue and miss their opportunity to raise a timely objection. This failure to consider an issue is properly seen as forfeiture. However, counsel making the "wrong" choice when confronted with a potential objection bears a different consequence than counsel neglecting to make a choice.

If counsel improperly waived an objection to instructional error, the appellate standard for obtaining relief is whether counsel provided ineffective assistance at trial, not whether a bad decision in hindsight can be recast as a missed opportunity to object. In this case, where counsel's attention was directed by the court to the sufficiency and propriety of those instructions and counsel affirmatively disclaimed any objection, the consequence of counsel's considered decision is waiver, not forfeiture. This conclusion is consistent with the approach taken by our federal civilian counterparts. *See United States v. Hoffman*, 76 M.J. 758, 765-66 (Army Ct. Crim. App. 2017) (detailing the holdings of courts of appeals from various federal circuits that the affirmative statement "no objection" constitutes waiver of error, not forfeiture). More importantly, our conclusion is consistent with our superior court's recent holding in *United States v. Swift*, 76 M.J. 210, 217 (C.A.A.F. 2017).

### 2. Plain-error review of instructional error.

Even if he did not waive his claim of instructional error or we looked beyond his waiver in the exercise of our Article 66, UCMJ, authority,[4] appellant has not met his burden for relief under plain-error review. Because any error in this case was

---

[4] In *United States v. Chin*, our superior court made clear that waiver of an error, absent a complete waiver of appellate review under Article 61, UCMJ, does not limit this court's authority to provide relief for errors under Article 66(c), UCMJ. 75 M.J. 220, 222-23 (C.A.A.F. 2016).

not plain and obvious, we do not directly determine whether the challenged instruction constituted error. *See United States v. Battles*, ARMY 20140399, 2017 CCA LEXIS 380, at *9-10 (Army Ct. Crim. App. 31 May 2017) (mem. op.) (finding assumed instructional error was neither plain and obvious nor prejudicial).

Moreover, even assuming plain and obvious error, appellant would still not be entitled to relief absent prejudice. In his brief, appellant alleges prejudice because "a correct instruction with respect to *mens rea* would have fundamentally changed the nature of the case." Based on the facts of this case—most notably appellant's version of events—we disagree. While the military judge gave a mistake-of-fact instruction, appellant's defense was actual consent. Appellant's account—either from his sworn statement admitted as a prosecution exhibit or his trial testimony—did not require him to infer the victim's consent from the circumstances. Instead, he described the victim as the sexual aggressor, initially making multiple unwanted sexual advances until he eventually relented. In fact, the only state-of-mind question defense counsel asked appellant was whether in hindsight he regretted the incident, not what his state of mind was at the time of the offense. In our review of the record, appellant's testimony left no middle ground for an *honest* but *incorrect belief* concerning the victim's consent *due to ignorance or mistake*. Either his belief about the victim's consent was correct because she expressly stated it and acted as the sexual aggressor in the situation; or he lied about her repeated and overt demands for oral and vaginal intercourse, making his claimed belief dishonest and not the result of ignorance or mistake.

Specifically, appellant claimed he was using the restroom when the victim came out of her bedroom where her husband was asleep, entered the unlocked restroom, and tried to remove his shorts and perform fellatio on him while he resisted her advances. Appellant testified the victim ripped her shirt off exposing her bare breasts before he forced his way out of the restroom, past the victim, and went to kitchen. He said the victim followed him to the kitchen, while asking for appellant and a co-assailant in the living room to let her perform fellatio on both of them. At the time the victim entered the kitchen, she had removed all of her clothes. Although initially resistant, appellant testified he eventually relented, allowing the victim to remove his shorts and perform fellatio on him while the co-assailant had either vaginal or anal intercourse with her. After a few minutes, appellant claims he and the co-assailant felt remorseful and ended the sexual encounter even though the victim expressed a desire to continue.

Regarding the vaginal intercourse, appellant claimed the victim followed him from the kitchen to the living room where she continued to act as the aggressor. As he sat in a recliner, appellant testified the victim again tried to remove his shorts until he relented, allowing her to fondle his penis before she initiated vaginal intercourse. After approximately five minutes, appellant again terminated the sexual activity even though the victim wanted to continue. By appellant's own account of

the oral and vaginal intercourse, the only consent that appears to have been inconsistent was appellant and the co-assailant's.

Not only did appellant claim overt expressions of the victim's consent for both the oral and vaginal intercourse, he specifically disclaimed facts that would have given rise to a potential mistake of fact as to consent. For example, appellant denied having any prior sexual history with the victim. In addition, appellant denied the victim made any statement during intercourse about wanting to go to bed.[5] Under appellant's version of consensual intercourse, this statement could have given rise to a potential mistake about whether the victim was immediately withdrawing her consent or stating a desire for the consensual intercourse to conclude relatively soon because she was getting tired. However, appellant testified the victim never made such a statement.

In conclusion, appellant's testimony left no room for the theory he mistakenly believed, either negligently or recklessly, the victim consented to the oral or vaginal intercourse. Accordingly, we are convinced any instructional error—plain or otherwise—was harmless beyond a reasonable doubt based on the facts and circumstances in this case.

**CONCLUSION**

On consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Judge CELTNIEKS and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[5] In her testimony, the victim repeatedly and emphatically denied consenting to any of the sexual acts appellant perpetrated against her. Specifically, the victim testified that she asked appellant if she could go to bed while he assaulted her in the restroom but "[h]e said no and this was going to happen every time he came over." The victim also testified that while appellant assaulted her in the living room, she was crying and "asked him a couple times if [she] could just go to bed, and he said that [she was] not going until [she] made him come."