*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————————

### UNITED STATES
Appellee

**v.**

### Richard A. GIFFORD, Specialist
United States Army, Appellant

### No. 15-0426
Crim. App. No. 20120545

Argued November 17, 2015—Decided March 8, 2016

Military Judge: T. Mark Kulish

For Appellant: *Captain Heather L. Tregle* (argued); *Lieutenant Colonel Charles D. Lozano, Lieutenant Colonel Jonathan F. Potter,* and *Major Aaron R. Inkenbrandt (*on brief).

For Appellee: *Captain Robyn M. Chatwood* (argued); *Major John K. Choike* and *Major A. G. Courie III* (on brief).

Judge OHLSON delivered the opinion of the Court, in which Chief Judge ERDMANN, Judges STUCKY and RYAN, and Senior Judge SENTELLE, joined.

————————————

Judge OHLSON delivered the opinion of the Court.[1]

Appellant was charged, inter alia, with three specifications of violating a lawful general order under Article 92, UCMJ, 10 U.S.C. § 892 (2012). The general order prohibited servicemembers twenty-one years of age and older from providing alcohol to individuals under twenty-one years of age for the purpose of consumption. Contrary to his pleas, a general court-martial composed of members with enlisted representation found Appellant guilty of these three

---

[1] Senior Judge David B. Sentelle, of the United States Court of Appeals for the District of Columbia Circuit, sat by designation, pursuant to Article 142(f), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 942(f) (2012).

specifications.[2] The panel reached its verdict after being instructed that the general order required the Government to prove both that (a) Appellant provided alcohol with the intent that it be consumed and (b) Appellant knew that the individuals to whom he was providing the alcohol were under twenty-one years of age. On appeal, however, the United States Army Court of Criminal Appeals (CCA) concluded that the general order "did not include a knowledge of age requirement," and it conducted its Article 66(c), UCMJ, 10 U.S.C. § 866 (2012), review accordingly. *United States v. Gifford,* 74 M.J. 580, 583 (A. Ct. Crim. App. 2015). We granted Appellant's petition to determine whether the CCA erred, and if so, to identify the proper legal standard the CCA should have applied in this case.

We hold that the CCA erred in the legal standard it applied in the course of its Article 66(c), UCMJ, review of Appellant's conviction. Specifically, consistent with Supreme Court precedent, we conclude that the general order at issue required the Government to prove Appellant's mens rea[3] with respect to the age of the recipients of the alcohol. We further hold that the Government was required to prove, at a minimum, that Appellant acted recklessly in this regard. We therefore reverse the CCA and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In December 2011, Appellant, a twenty-nine-year-old infantry specialist, hosted a social event in his barracks room at Camp Humphreys, Republic of Korea. At this party, Appellant provided alcohol to fellow soldiers who were under twenty-one years of age. At the time that he did so, a Second Infantry Division policy letter was in effect which stated, in pertinent part: "Service members who are 21 years of age

---

[2] Appellant was also charged and convicted of one specification of aggravated sexual assault upon someone substantially incapacitated, in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2006). Because this offense does not pertain to the granted issue, we do not further address it in this opinion.

[3] "Mens rea" is the Latin term for "guilty mind" and refers to "[t]he state of mind that the prosecution … must prove that a defendant had when committing a crime." *Black's Law Dictionary* 1134 (10th ed. 2014).

and over may not distribute or give alcohol to anyone under 21 years of age for the purpose of consumption." There is no dispute that this policy letter constituted a lawful general order within the ambit of Article 92, UCMJ.

At trial, the military judge discussed with counsel the wording of the policy letter. He specifically addressed the issue of mens rea, stating:

> The other state of mind issue that's raised by the policy letter is it seems fairly implicitly clear, I guess is one way to put it, that the accused, as an element of the offense, has to have known—it's not only that the person receiving the alcohol was under the age of 21 but he has to have known that. Do both sides agree?

Both trial counsel and trial defense counsel agreed with the military judge's characterization of the burden of proof placed on the Government in this case. Accordingly, the military judge instructed the panel that the Government was required to prove that "the accused actually knew at the time of the alleged offense that the person named in [the] specification [i.e., the recipient of the alcohol] was under 21 years [of age]."

Upon deliberation, the panel found Appellant guilty of each of the three specifications and sentenced him to confinement for forty-five days, forfeiture of all pay and allowances, reduction to E-1, and a bad-conduct discharge. The convening authority subsequently approved the sentence as adjudged. On direct appeal, the CCA set aside one of Appellant's convictions on the basis of factual sufficiency, but otherwise affirmed the remaining findings of guilt as well as the sentence. *Gifford*, 74 M.J. at 583–84. However, in the course of its decision, the CCA opined that the mens rea standard afforded to Appellant at trial was not required by law. *Id.* at 583. Consistent with this holding, the lower court conducted its Article 66(c), UCMJ, review without regard to whether Appellant knew the ages of the persons to whom he supplied the alcohol. *Id.* at 582–83.

Appellant petitioned this Court and we granted review of the following issue:

> Whether the Army Court of Criminal Appeals erred in holding that Second Infantry Division Policy Letter number 8 (11 January 2010), which prohibits service members who are 21 years of age and older from distributing alcohol to persons under 21 for the purposes of consumption, did not contain an element that Appellant knew that the person to whom distribution was made was under 21 years of age, and therefore imposed strict liability for such actions.

*United States v. Gifford*, 74 M.J. 461, 461–62 (C.A.A.F. 2015).

## II. ANALYSIS

A. Mens Rea Requirement

In the instant case, our first task is to determine whether a mens rea requirement applies to the general order at issue. This is a question of law which we review de novo, *see United States v. Serianne*, 69 M.J. 8, 10 (C.A.A.F. 2010), and in doing so, we invoke the traditional rules of statutory construction, *see United States v. Estrada*, 69 M.J. 45, 47 (C.A.A.F. 2010); *United States v. Baker*, 8 C.M.A. 504, 507, 40 C.M.R. 216, 219 (1969).

1. Proof of Mens Rea is the Rule Rather Than the Exception

As the Supreme Court recognized in *United States v. United States Gypsum Co.*, 438 U.S. 422 (1978), "[the] existence of a *mens rea* is the rule, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *Id.* at 436 (alteration in original) (citation omitted) (internal quotation marks omitted). The Court further noted in *Morissette v. United States*, 342 U.S. 246, 250 (1952), that "[t]he contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion" but is instead "universal and persistent in mature systems of law." If, at trial, the Government is not required to prove that an accused had knowledge of the facts that make his or her actions criminal in order to secure a conviction, then the underlying crime is properly deemed a strict liability offense. *Liparota v. United States*, 471 U.S.

419, 443 n.7 (1985) (White, J., joined by Burger, C.J., dissenting) ("Under a strict-liability statute, a defendant can be convicted even though he was unaware of the circumstances of his conduct that made it illegal."); *see also Staples v. United States*, 511 U.S. 600, 607 n.3 (1994) (noting that knowledge "[of] the facts that make [an individual's] conduct fit the definition of [an] offense.... is necessary to establish *mens rea*"). However, the Supreme Court has cast a jaundiced eye on such offenses: "While strict-liability offenses are not unknown to the criminal law … the limited circumstances in which Congress has created and this Court has recognized such offenses attest to their generally disfavored status." *United States Gypsum Co.*, 438 U.S. at 437–38 (citations omitted).

On the basis of this general disfavor for strict liability offenses, silence in a criminal statute—or, as in this case, a general order—does not prevent mens rea from being inferred. The Supreme Court has routinely held that while courts should "ordinarily resist reading words or elements into a statute that do not appear on its face," *Dean v. United States*, 556 U.S. 568, 572 (2009) (internal quotation marks omitted) (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997)), the "'mere omission from a criminal enactment of any mention of criminal intent' should not be read 'as dispensing with it,'" *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (quoting *Morissette*, 342 U.S. at 250). Rather, an "indication of congressional intent ... is required to dispense with *mens rea*." *Staples*, 511 U.S. at 606. Thus, the Supreme Court has repeatedly inferred a mens rea requirement in instances where it was necessary to "separate wrongful conduct from 'otherwise innocent conduct'"—even when the text of a statute was otherwise silent. *Elonis*, 135 S. Ct. at 2010 (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000)); *see also Staples*, 511 U.S. at 619.

2. Public Welfare Offenses are an Exception to this General Rule

The general rule that the Government must prove an accused's mens rea in order to secure a criminal conviction is not without exception. The Supreme Court has acknowledged that, in limited circumstances, Congress may purposefully omit from a statute the need to prove an

accused's criminal intent, and courts are then obligated to recognize this congressional intent and conform their rulings accordingly. *See, e.g., United States v. Balint*, 258 U.S. 250, 252–53 (1922); *see also Staples*, 511 U.S. at 606 ("[S]ome indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime."). In certain instances, this class of legislation produces what is known as a "public welfare offense," *Staples*, 511 U.S. at 606–07, which uniquely focuses on "social betterment" or "proper care" rather than punishment, *Balint*, 258 U.S. at 251–53.

In the instant case, the Government argues that the underlying offense contained in the general order is, indeed, analogous to a classic "public welfare offense." In doing so, the Government cites the nature and purpose of the general order, as well as the long history of treating alcohol as a dangerous substance, in positing that the presumption favoring proof of an accused's mens rea does not apply to the offense at bar. We disagree.[4]

---

[4] We also disagree with the CCA's apparent contention that "'Congress and the President'" contemplated the framework which its holding endorsed. *Gifford*, 74 M.J. at 582 (noting that "'Congress and the President have adopted a scheme of strict liability in relation to general orders or regulations'" (quoting *United States v. Leverette,* 9 M.J. 627, 631 (A.C.M.R. 1980))). It is true that actual "knowledge" of the existence of a general order is not typically required under Article 92, UCMJ. *United States v. Stone*, 9 C.M.A. 191, 193, 25 C.M.R. 453, 455 (1958) ("[P]roof of knowledge of a general order or regulation … is irrelevant"); *Manual for Courts-Martial, United States* pt. IV, para. 16.c.(1)(d) (2012 ed.) (*MCM)* ("Knowledge of a general order or regulation need not be alleged or proved, as knowledge is not an element of this offense and a lack of knowledge does not constitute a defense."). However, this tenet merely reflects the long-recognized maxim *ignorantia juris non excusat*—ignorance of the law excuses no one. The fact that actual knowledge of a general order is typically immaterial does not conflict with the coordinate truth that mens rea typically is an essential element of every criminal offense. This case involves a mistake of fact as to age, not a mistake of law, and as the Court in *Elonis* held, an accused "generally must know the facts that make his conduct fit the definition of the offense." *Elonis*, 135 S. Ct. at 2009 (citation omitted) (internal quotation marks omitted).

3. The Underlying Offense Contained in the General Order Was Not a Public Welfare Offense

The Supreme Court has somewhat hesitantly contoured the boundaries of those instances where mens rea may be dispensed with as a prerequisite for conviction. For example, in *Morissette*, Justice Jackson wrote:

> Neither this Court nor, so far as we are aware, any other has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not. We attempt no closed definition, for the law on the subject is neither settled nor static.

342 U.S. at 260; *accord Staples*, 511 U.S. at 620 (same). This hesitancy notwithstanding, the Supreme Court's core inquiry has remained relatively simple and direct: did Congress *purposefully* omit intent from the statute at issue? *See, e.g.*, *Staples*, 511 U.S. at 620 ("[O]ur holding depends critically on our view that if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons … it would have spoken more clearly to that effect."); *United States v. Freed*, 401 U.S. 601, 616 (1971) (Brennan, J., concurring in the judgment) ("[T]he question is solely one of congressional intent."). Thus, as the Supreme Court held in *Balint*, "[whether mens rea is a necessary facet of the crime] is a question of legislative intent to be construed by the court." 258 U.S. at 252. If such an intent can be identified, courts must construe the relevant statute accordingly. *Morissette*, 342 U.S. at 254 n.14 ("[Though the] [c]onsequences of a general abolition of intent as an ingredient of serious crimes have aroused the concern of responsible and disinterested students of penology…. [this] would not justify judicial disregard of a clear command to that effect from Congress …."); *cf. Lambert v. California*, 355 U.S. 225, 228 (1957) ("There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition."). This makes clear that the question before us in the instant case is whether the commander— acting pursuant to his congressionally delegated authority— intended to create a public welfare offense through his

general order. We cannot divine such an intent and therefore decline to treat the general order as having created a public welfare offense.[5]

If Congress is expected to speak with a clear voice in this context, the same should be expected of a commander. We find no justification for holding commanders to a lower standard than a legislature as they exercise their power to issue a general order with punitive consequence, and we take particular note in the instant case that the commander did not explicitly indicate his intention to create a public welfare offense. Moreover, for the reasons outlined below, we do not find any other basis to conclude that this general order, which stands mute on the subject, was intended to override the traditional call of criminal law that "wrongdoing must be conscious to be criminal."[6] *Morissette*, 342 U.S. at 252.

---

[5] In deciding this case we need not address the question of whether a commander actually has the authority to create a public welfare offense pursuant to Article 92, UCMJ, because it is clear in this instance that the commander did not do so. We therefore expressly decline to decide that issue. Accordingly, nothing in our opinion should be construed as indicating one way or another whether a commander may create a public welfare offense by issuing an order regulating such items as hand grenades, dangerous narcotics, or other activities that traditionally have been deemed public welfare offenses. The question of whether such crimes may be deemed public welfare offenses under Article 92, UCMJ, even though they nearly always carry harsher penalties than those for equivalent civilian crimes, is appropriately saved for another day.

[6] Our ruling today does not disturb the fact that a lack of knowledge of the age of a victim is not a defense to sexual offenses involving children under Article 125, UCMJ, 10 U.S.C. § 925 (2012). *United States v. Wilson*, 66 M.J. 39, 42–44 & 43 n.6 (C.A.A.F. 2008) (noting that Article 125, UCMJ, does not create a "public welfare" offense per se and nonetheless rejecting a mistake of fact as to age defense because such was "the [historical] practice of the majority of jurisdictions," and in light of the complete lack of legislative intent to create such a defense for this particular offense).

*a. The history of alcohol offenses does not support a conclusion that the commander intended to create a public welfare offense*

In *Morissette*, the Supreme Court emphasized the need to examine the historical treatment of a crime in order to determine if Congress purposefully intended to omit scienter from the text of a statute. The Supreme Court noted:

> Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, or for whose definition the courts have no guidance except the Act.

*Morissette*, 342 U.S. at 262. The Supreme Court also explained the need to explore "legal tradition[s] and [the] meaning of centuries of practice" in discerning the intent of Congress. *Id.* at 263.

In the instant case, history, context, and legal traditions do not provide us with an answer favorable to the Government. True, the foundation of public welfare offenses can be traced back to alcohol related offenses. *Id.* at 256 ("The pilot of the [public welfare] movement in this country appears to be a holding that a tavernkeeper could be convicted for selling liquor to a[] habitual drunkard even if he did not know the buyer to be such." (citing *Barnes v. State*, 19 Conn. 398, 398 (1849))). But it is important to note that laws that apply to businesses that sell liquor are distinguishable from those that regulate the conduct of private citizens. Businesses selling alcohol are far more likely to be viewed as "standing in responsible relation to a public danger" than are mere individuals who provide alcohol to friends and acquaintances for free. *See id.* at 260.

Moreover, there is no modern consensus that offenses involving alcohol necessarily constitute public welfare offenses. *Compare In re Jennings*, 34 Cal. 4th 254, 267–68 (2004) (noting that California recognizes a number of alcohol-related public welfare offenses), *and State v. Larson*, 653 So. 2d 1158, 1162, 1166 (La. 1995) (holding that a

statute which "ban[s] nudity at a licensed premises where alcohol is served does not require … scienter in order to be valid" because, inter alia, "alcohol is an inherently dangerous substance"), *with Selwyn v. Ward*, 879 A.2d 882, 890 (R.I. 2005) ("We are satisfied that, although selling grain alcohol or alcoholic beverages to a minor is a crime and may pose serious risks to the purchaser and others, it is not an ultrahazardous or abnormally dangerous activity …."), *and State v. Parker*, 642 N.E.2d 66 (Ohio Mun. Ct. 1994) (noting that a statute prohibiting the sale of alcohol to a minor is not a strict liability offense). Thus, we decline to hold that "legal tradition[s] and [the] meaning of centuries of practice," *Morissette,* 342 U.S. at 263, support the argument that the general order at issue should be deemed a public welfare offense.

### *b. The nature of the offense further weighs against a conclusion that the general order constituted a public welfare offense*

The Supreme Court has held that in determining whether a particular statute constitutes a public welfare offense, "a court must have in view some category of dangerous and deleterious devices that will be assumed to alert an individual that he stands in 'responsible relation to a public danger,'" *Staples*, 511 U.S. at 612 n.6 (citation omitted), or "a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety," *Liparota*, 471 U.S. at 433. At first blush it may appear that, for the purposes of our analysis, alcohol should be deemed a "dangerous and deleterious" item and that providing it to someone underage would "seriously threaten the community's health or safety." However, such an approach stands at odds with the Supreme Court's decision in *Staples*.

In that case, which involved a private citizen's possession of a fully automatic weapon, the Court concluded that the applicable statute criminalizing the possession of such a firearm did not constitute a public welfare offense. In doing so, the Court highlighted the fact that the broad nature of gun regulation does not diminish "the common experience that owning a gun is usually licit and blameless conduct." *Staples*, 511 U.S. at 613. The Supreme Court further

concluded that under such circumstances it was "unthinkable … that Congress intended to subject … law-abiding, well-intentioned citizens to … imprisonment" if they did not possess knowledge of the facts that made their conduct criminal. *Id.* at 615 (internal quotation marks omitted) (citation omitted).

We conclude that the same reasoning applies here. The risks that accompany alcohol consumption do not diminish the common experience that distributing alcohol to peers at a social event, like routine gun ownership, is typically legal. To be blunt, if a congressional statute regulating the possession of a fully automatic firearm does not constitute a public welfare offense then, absent other indicators to the contrary, it would seem to be overreaching on our part to conclude that a commander's general order regulating the distribution of alcohol to someone who is twenty years and 364 days old is a public welfare offense simply because of the underlying nature of this prohibited conduct.[7]

---

[7] In furtherance of this point, we note that servicemembers who are under twenty-one years of age can drink lawfully under certain circumstances. At the time the general order in this case was issued, Department of Defense (DoD) Instruction 1015.10 provided that "[t]he minimum drinking age on a DoD installation located outside the United States shall be 18 years of age. A higher minimum drinking age shall be based on international treaties … and on the local situation as determined by the installation commander." Dep't of Defense, Instr. 1015.10, Military Morale, Welfare, and Recreation (MWR) Programs Enclosure 9, para. 2.a.(3) (July 6, 2009), *available at* http://www.cac.mil/docs/DODI-1015.10.pdf (last visited Feb. 25, 2016). Moreover, in regard to the standard requirement that servicemembers must be at least twenty-one years old in order to be able to drink legally while in the United States, the instruction went on to provide that "commander[s] … may waive the requirements … if it is determined that the exemption is justified by special circumstances.… such as the conclusion of arduous military duty or the anniversary of the establishment of a Military Service or organization." *Id*. at para. 2.a.(4). Thus, at times, the DoD itself authorizes the very conduct underlying this case. We decline to find that providing alcohol to someone who is under twenty-one years of age for the purpose of consumption is somehow less dangerous or poses less of a threat to the community's health or safety simply because that action occurs on

*c. The gravity of punishment weighs against finding that the commander intended to create a public welfare offense*

The Supreme Court has long recognized that "penalties [for public welfare offenses] commonly are relatively small, and conviction does not [do] grave damage to an offender's reputation." *Morissette*, 342 U.S. at 256. Therefore, the Supreme Court has held that "a severe penalty is a further factor tending to suggest that Congress did not intend to eliminate a *mens rea* requirement." *Staples*, 511 U.S. at 618; *accord United States Gypsum Co.*, 438 U.S. at 442 n.18 (same).

Relevant to the instant case, a violation of Article 92, UCMJ, can be punished with a dishonorable discharge, forfeiture of all pay and allowances, and confinement for up to two years. *MCM* pt. IV, para. 16.e.(1). It is self-evident that such a punishment is not "relatively small" and instead represents a "severe penalty" that can do "grave damage" to an accused's reputation.

4. Conclusion

Ultimately, we hold that the CCA erred insofar as it conducted its Article 66(c), UCMJ, review under the mistaken belief that the general order at issue did not include a mens rea requirement with respect to age. We base our conclusion on (a) the fact that a mens rea requirement is the rule rather than the exception in criminal offenses, even in those instances when a statute is silent on that point; (b) the lack of any overt evidence that the commander intended to create a public welfare offense; and (c) our refusal to intuit such an intent on the commander's behalf, given the historical context of alcohol offenses, the underlying character of the offense, and the gravity of the punishment.

B. Appellant's knowledge with respect to age should have been reviewed under a recklessness standard

Having concluded that a scienter requirement applies in this case, a single question remains: what *level* of mens rea (i.e., intentionally, knowingly, recklessly, or negligently)

---

June 14th—the Army's birthday—rather than on June 13th or June 15th.

should the CCA have used in the course of its Article 66(c), UCMJ, review? The answer, we hold, is recklessness.

In the recent case of *Elonis*, 135 S. Ct. at 2004-07, the defendant made a number of emotionally charged "posts" on social media and was convicted under 18 U.S.C. § 875(c)—a statute criminalizing the interstate communication of threats.[8] Similar to the case at bar, the statute contained no reference to mens rea. The Government urged the Court to hold that the prosecution was only required to prove at trial that the defendant intentionally made the posts containing his alleged threats and that he was *negligent* with respect to how they would be interpreted. But the Court believed this insufficient. "'[T]he crucial element separating legal innocence from wrongful conduct' is the threatening nature of the communication," the Supreme Court stated. *Elonis*, 135 S. Ct. at 2011 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994)). "[T]he mental state requirement must apply to the fact that the communication contains a threat." *Id.* Declining to state precisely what that mental state requirement should be, and refusing to answer whether recklessness would suffice, the Supreme Court emphasized that a court should "only [intuit] that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Id.* at 2010 (internal quotation marks omitted) (quoting *Carter*, 530 U.S. at 269); *accord X-Citement Video, Inc.*, 513 U.S. at 72. The Supreme Court then reversed the appellant's conviction and remanded the case to the lower court so that a standard greater than negligence could be applied to the defendant's conduct.[9]

Although no federal appeals court has ruled on the issue of whether recklessness is a sufficient level of scienter for

[8] Section 875(c) provides, in relevant part: "Whoever transmits in interstate or foreign commerce any communication containing ... any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both."

[9] *Elonis*, 135 S. Ct. at 2013 (noting that the Court "may be 'capable of deciding the recklessness issue,'" but declining to do so) (citation omitted); *see also id.* at 2014 (Alito, J., concurring in part and dissenting in part) (criticizing the majority's "refusal to provide an answer").

the crime of communicating a threat under the federal civilian statute, recklessness has been described as "morally culpable" when applied to other criminal offenses. *Elonis*, 135 S. Ct. at 2015 (Alito, J., concurring in part and dissenting in part) (citing *Farmer v. Brennan*, 511 U.S. 825, 835–36 (1994) (deliberate indifference to an inmate's harm)); *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964) (criminal libel); *Tison v. Arizona*, 481 U.S. 137, 157 (1987) ("'reckless disregard for human life'" may justify the death penalty)). Under the circumstances of this case, we conclude that a recklessness standard both comports with Supreme Court precedent and satisfies the command of the common law. We reach this conclusion for three reasons.

First, recklessness is the lowest "*mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Cf. Elonis*, 135 S. Ct. at 2010 (internal quotation marks omitted) (quoting *Carter*, 530 U.S. at 269). Under this mens rea standard, lawful conduct, such as providing alcohol to one's friends or guests while honestly believing them to be of legal age, would be excluded from proscription under the general order. *Cf. Staples*, 511 U.S. at 619. On the other hand, providing alcohol to individuals for the purpose of consumption while *consciously* disregarding the *known* risk that those individuals are under twenty-one would be an act well within the scope of the general order's grasp.

Second, we believe that intuiting recklessness into the general order is the greatest stride this Court can take before "stepping over the line that separates interpretation from amendment." *Elonis*, 135 S. Ct. at 2015 (Alito, J., concurring in part and dissenting in part).

And finally, both the Model Penal Code and state courts across the country confirm the propriety of a recklessness standard in this context. Specifically, the Model Penal Code, which we have "historically looked to [for] external guidance," *United States v. Torres*, 74 M.J. 154, 158 (C.A.A.F. 2015), identifies recklessness as the lowest possible standard that can be read into a statute that does not set out "the culpability sufficient to establish a material element of an offense," Model Penal Code § 2.02(3) (1962) ("When the culpability sufficient to establish a material

element of an offense is not prescribed by law, such element is established if a person acts purposely, knowingly *or recklessly* with respect thereto.") (emphasis added). Further, many states have codified the recklessness standard in statutes of their own. *See, e.g.*, 18 Pa. Cons. Stat. § 302(c) (2016) ("When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly *or recklessly* with respect thereto.") (emphasis added); Utah Code Ann. § 76-2-102 (2015) ("Every offense not involving strict liability shall require a culpable mental state, and when the definition of the offense does not specify a culpable mental state …, intent, knowledge, *or recklessness* shall suffice to establish criminal responsibility.") (emphasis added); Tenn. Code Ann. § 39-11-301(c) (2015) ("If the definition of an offense … does not plainly dispense with a mental element, intent, knowledge *or recklessness* suffices to establish the culpable mental state.") (emphasis added).

Accordingly, we conclude that the proper legal standard the CCA was obligated to apply in the course of its Article 66(c), UCMJ, review of Appellant's conviction was whether Appellant acted with reckless disregard as to whether the individuals to whom he was providing alcohol were under twenty-one years of age.

## III. CONCLUSION

We conclude that the CCA erroneously applied a standard short of that required by law and, in doing so, improperly conducted its Article 66(c), UCMJ, review of Appellant's conviction. Accordingly, the decision of the United States Army Court of Criminal Appeals is reversed. The record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for further review under Article 66(c), UCMJ.