*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, HACKEL, and DALY
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Mason K. ARMAO**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202200109**

_____

Decided: 17 November 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Adam M. King (arraignment)
Benjamin C. Robertson (trial)

Sentence adjudged 13 January 2022 by a general court-martial convened at Marine Corps Base Camp Foster, Okinawa, Japan, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for four years, and a dishonorable discharge.[1]

---

[1] Appellant received 229 days of pretrial confinement credit.

For Appellant:
*Mr. Carl A. Marrone, Esq.*

For Appellee:
*Lieutenant Michael A. Tuosto, JAGC, USN*
*Lieutenant Gregory A. Rustico, JAGC, USN*

Senior Judge HACKEL delivered the opinion of the Court, in which Chief Judge HOLIFIELD and Judge DALY joined.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

HACKEL, Senior Judge:

A military judge sitting alone as a general court-martial convicted Appellant pursuant with his pleas. Appellant pleaded guilty to two specifications of sexual assault of a child in violation of Article 120b, Uniform Code of Military Justice [UCMJ], for twice committing a sexual act upon Miss Romeo, a child who had not yet attained the age of sixteen.[2]

Appellant asserts six assignments of error (AOEs): (1) his sentence is unjustly disproportionate compared to that of his companion, Lance Corporal [LCpl] Fahey; (2) Article 120b, UCMJ, unconstitutionally imposes strict liability by not requiring the Government to prove, at minimum, that he acted recklessly with regard to Miss Romeo's age; (3) trial counsel violated Rule for Courts-Martial [R.C.M.] 701(a)(6) by willfully failing to conduct a digital forensic examination or otherwise do any inspection or investigation of Appellant's cell phone that was in the Government's possession; (4) the military judge abused his discretion when he accepted Appellant's guilty plea despite the presence of evidence and statements inconsistent with the plea, which constituted a reasonable mistake of fact defense; (5) defense counsel were ineffective

---

[2] 10 U.S.C. § 920b. The names of the victims and witnesses in this opinion are pseudonyms. We have used pseudonyms consistent with those of a companion case, *United States v. Roache*, No. 202200128, 2023 CCA LEXIS 475 (N-M Ct. Crim. App. Nov. 9, 2023).

for failing to file a motion to suppress Appellant's statements to Naval Criminal Investigative Service [NCIS] investigators on 28 May 2021, as well as his apology letter written on the same date; and (6) defense counsel were ineffective for failing to object to the Government's motion to change the location of trial under R.C.M. 906(b)(11).[3] We find no prejudicial error and affirm.[4]

## I. BACKGROUND

Appellant served with LCpls Fahey and Roache in 2021 when assigned to Ammunition Company, 3d Supply Battalion, located on a northern camp in Okinawa, Japan. They soon became friends, not only working together but also socializing off-duty.

In May 2021, LCpl Roache carried out a scheme using multiple social media accounts to find children who might be interested in exchanging sex for money with a "sugar daddy."[5] LCpl Roache targeted female children attending Lester Middle School, a Department of Defense Education Activity School on board Camp Lester in Okinawa, Japan. He succeeded in this scheme on 20 May 2021 when he met and sexually assaulted Miss Lima, a child who had attained 12 years of age but had not attained 16 years of age.[6]

Not long after his sexual assault of Miss Lima, LCpl Roache continued his scheme, only this time he included several of his friends. He found three more

---

[3] Appellant's fifth and sixth AOEs are raised pursuant to *United States v. Grostefon*, 12 C.M.A. 431 (C.M.A. 1982). We have reviewed Appellant's third, fifth, and sixth AOEs and find them to be without merit. *See United States v. Matias,* 25 M.J. 356, 363 (C.M.A. 1987).

[4] Although not raised by Appellant, the result of the court-martial of LCpl Roache (a companion case) was not listed on Appellant's Statement of Trial Results or Convening Authority's Action as required by § 0150a(3) and § 0153a(5), respectively, of the Dep't of the Navy, Judge Advocate General Instr. 5800.7G, Manual of the Judge Advocate General, (CH-1, Feb. 14, 2022). Although Appellant's case was originally referred in conjunction with *United States v. Roache,* the cases were ultimately severed. But we find no prejudice to Appellant's case. *See United States v. Ortiz,* 52 M.J. 739, 741 (N-M.Ct.Crim.App. 2000). We note that LCpl Fahey's court-martial was referred by a different convening authority and thus does not qualify as a companion case

[5] LCpl Roache defined "sugar daddy" as a person who would pay for sex acts. Pros. Ex. 2 at 2. Additional details regarding this scheme are explained in *Roache*, No. 202200128, 2023 CCA LEXIS 475, at *1-*8.

[6] *Roache*, No. 202200128, 2023 CCA LEXIS 475, at *3-*4.

children from Lester Middle School and induced them to send him nude, sexually explicit images of themselves. These girls were Miss Romeo, Miss Pete, and Miss Rose. Lance Corporal Roache told LCpl Fahey and Appellant that he had found girls through social media who wanted to participate in a "summer challenge" to receive points for legal and illegal acts, including sexual acts. He created a group chat titled "(Wo)MEN OF CULTURE," including Appellant, LCpls Fahey, Roache, Hotel and Corporal [Cpl] Golf.[7] LCpl Roach sent the nude images to the members of the group chat. On 25 May 2021, LCpl Fahey wrote in the "(Wo)MEN OF CULTURE" group chat, "OK are you down to rail some hoes yes [or] no,…[e]ven if they're 12."[8] Appellant responded "only if its [sic] you," referring to LCpl Fahey.[9] As LCpl Fahey pressed for confirmation of Appellant's participation, Appellant followed up with "I didn't say no mf. Im tryna smash too," ultimately agreeing to participate when he wrote, "Si papi."[10]

Lance Corporals Fahey, Roache, and Hotel told Appellant that, from having viewed the images, they believed that the girls were real people. When Appellant expressed doubt about the ages of the girls, LCpl Hotel stated that the girls appeared old enough to have sex because the images looked like they had been taken in a barracks bathroom. Lance Corporal Roache then asked LCpl Fahey and Appellant to send him photographs of themselves from which each of the three girls would select their own "sugar daddy." This led to each of the three girls pairing with one of the Marines, with 13-year-old Miss Romeo connecting with Appellant.

Soon thereafter, LCpl Roache called Appellant via Snapchat. Appellant asked LCpl Roache who the girls were, and LCpl Roache said that they might be "military brats."[11] He also told Appellant and LCpl Fahey that Miss Pete said she was 13 years old and that Miss Rose and Miss Romeo were likely the same age. After the call, each of the three Marines spoke individually to the girls who had "picked" them.

The Marines and the three girls made plans to meet up on 27 May 2021 for the express purpose of having sex. To that end, LCpl Roache reserved three rooms at a hotel near Camp Lester. Between 25 and 27 May 2021, prior to meeting the girls, Appellant told Miss Romeo over Snapchat that he desired to

---

[7] Neither LCpl Hotel nor Cpl Golf (pseudonyms) later participated in the alleged conspiracy,

[8] Pros. Ex. 2 at 3; Pros. Ex. 1 at 28-9.

[9] Pros. Ex. 2 at 3.

[10] Pros. Ex. 1 at 29.

[11] Pros. Ex. 2 at 3.

have sex with her. During the conversation, Miss Romeo indicated that she was a virgin and they discussed Miss Romeo's sexual preferences and the clothes she would wear when they planned to meet.

On 26 May 2021, LCpl Hotel told Appellant that he did not know the girls' ages. He stated that his previous assumption—based on the backgrounds in the images he had seen—was not a good means to identify the girls' ages. He advised Appellant not to meet with the girls.

The plan came to fruition on 27 May 2021. On the way to meet the girls, Appellant purchased condoms and lubricant and LCpl Fahey purchased alcohol. The Marines then met up with the victims at an off-base restaurant in sight of Lester Middle School. From the restaurant, the three Marines and their victims walked to the hotel, where they went straight to Appellant's room. After some time, LCpl Fahey suggested that they begin drinking alcohol. He removed the alcohol out of the refrigerator, poured several drinks, a mix of rum and pineapple juice, and offered everyone drinks. The girls all drank some alcohol, but in different amounts: Miss Pete drank only a small amount, Miss Romeo drank her whole cup, and Miss Rose drank her own cup, the remainder of Miss Pete's cup, and the remainder of the bottle of rum.

At this point LCpl Roache suggested that the group separate as couples into their individual rooms, and Appellant agreed. LCpl Fahey, LCpl Roache, Miss Pete, and Miss Rose departed the room, but Miss Romeo remained behind in Appellant's room. Once they were alone, Appellant asked Miss Romeo if she was ready to have sex. She agreed. After kissing her, Appellant removed her clothes, put on a condom, got into bed with her, and engaged in intercourse with her, penetrating her vulva with his penis. After a few minutes they agreed to have sex again. He put on new condom and again penetrated her vulva with his penis.

Soon thereafter, after Appellant had showered and Miss Romeo had dressed, the two other Marines and their victims returned to Appellant's hotel room. They decided to go out and get food, in part because Miss Rose needed to sober up. While out to get food, the girls eventually split off from the three Marines.

Not long after parting ways with the girls, the Marines returned to the hotel and went to LCpl Roache's room. Soon thereafter, a law enforcement official from the Provost Marshal's Office entered the room and apprehended the three Marines.

At all times during this event, Miss Romeo and Miss Pete were 13 years of age and Miss Rose was 14 years of age.

On 21 October 2021, LCpl Fahey pleaded guilty at a general court-martial to three specifications of sexually assaulting Miss Rose, a child under the age

of 16, in violation of Article 120b, UCMJ.[12] The plea agreement contained a sentence limitation portion indicating that the military judge would sentence LCpl Fahey to a term of confinement for 48 months. The military judge sentenced him to confinement for 48 months, reduction to E-1, and a dishonorable discharge.[13]

Additional facts will be set forth as necessary to resolve Appellant's assignments of error.

## II. DISCUSSION

### A. Appellant's Sentence is not Unjustly Disproportionate Compared to that of Lance Corporal Fahey.

Appellant claims that his sentence, including confinement for four years, reduction to E-1, and a dishonorable discharge, is inappropriately severe and unjustly disproportionate when compared to that of LCpl Fahey. Appellant focuses solely on the term of confinement.

### 1. Standard of Review

We review sentence appropriateness de novo.[14] This Court may only affirm "the sentence, or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[15] In exercising this function, we seek to ensure that "justice is done and that the accused gets the punishment he deserves."[16] The review requires

---

[12] *United States v. Fahey*, No. 202200047, 2023 CCA LEXIS 18 (N-M Ct. Crim. App. Jan. 20, 2023). Appellant did not move to attach the Entry of Judgment from LCpl Fahey's court-martial though he articulated facts from it in his brief. In accordance with Rule 6(b)(2) of our Rules of Appellate Procedure, this Court took judicial notice of and considered the Entry of Judgment, Charge Sheet, and plea agreement of LCpl Fahey—documents outside Appellant's record of trial—in our analysis pursuant to *United States v. Jessie,* 79 M.J. 437, 440 (C.A.A.F 2020), where the Court of Appeals for the Armed Forces recognized the appropriateness of considering material from outside the record when "necessary for resolving issues raised by materials in the record." *Jessie*, 79 M.J. at 444.

[13] *United States v. Fahey*, No. 202200047, 2023 CCA LEXIS 18 (N-M Ct. Crim. App. Jan. 20, 2023); EOJ.

[14] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[15] Article 66(d)(1), UCMJ.

[16] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[17] We have significant discretion in determining sentence appropriateness, but may not engage in acts of clemency.[18]

The appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases.[19] We are not required to engage in comparison of specific cases "'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'"[20] "Closely related" cases are those that "involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design."[21] An appellant must show that his case is closely related to other cases and that his sentence is "highly disparate."[22] When considering whether sentences are "highly disparate," the test "is not limited to a narrow comparison of the relative numerical values of the sentences at issue, but also may include consideration of the disparity in relation to the potential maximum punishment."[23] If an appellant meets these two challenges, then the Government must show a rational basis for the disparity.[24]

### 2. Analysis

To begin, we find that Appellant's case was closely related to that of LCpl Fahey. Not only were they charged as alleged co-conspirators, but Appellant and LCpl Fahey carried out nearly the exact same offenses—together, at the

---

[17] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[18] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

[19] *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985).

[20] *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *Ballard*, 20 M.J. at 283).

[21] *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994); *see also Lacy*, 50 M.J. at 288.

[22] *Id.*

[23] *Lacy*, 50 M.J. at 289.

[24] *Id*. at 288.

same time, and over essentially identical timelines. The only meaningful difference in their cases is that they committed the offenses against different child victims.[25]

We next find that Appellant's sentence was not highly disparate to that of LCpl Fahey, for an obvious reason: they received identical sentences.[26] Appellant claims that his sentence is disproportionate because he pleaded guilty to only two specifications of violating Article 120b, UCMJ, while LCpl Fahey pleaded guilty to three specifications of the same offense.[27] Citing no authority, Appellant alleges "from a logical and equitable point of view, two identical sentences should be based on identical convicted misconduct."[28] He states, "There is no logical or just basis for [Appellant] to be sentenced identically to LCpl [Fahey]."[29] We disagree.

The record could not reflect a case in which two co-accuseds have committed more closely related offenses. Under the scheming of LCpl Roache, Appellant and LCpl Fahey participated in a plot over the course of several days to meet with and have sex with three girls between the ages of 12 and 16 years. On 27 May 2021, this plot succeed. After having found their victims, taken them to a hotel, and plied them alcohol, the three Marines and their respective victims separated into separate hotel rooms to have sex. Over the course of mere minutes, Appellant twice engaged in sexual intercourse with Miss Romeo, each time penetrating her vulva with his penis. While this was taking place, in his room at the same hotel, LCpl Fahey touched Miss Rose's genitalia with the intent to gratify his sexual desire, performed oral sex on her, and penetrated her vulva with his penis. In the space of minutes, each Marine sexually assaulted their victims multiple times in similar ways. Appellant urges us to find that his unlawful acts and those of LCpl Fahey are distinguishable because LCpl Fahey pleaded guilty to three specifications of sexual assault of a child while Appellant only pleaded guilty to two specifications. We disagree with Appellant's premise.

Our review of the plea agreements and guilty pleas of Appellant and LCpl Fahey also provides no support for Appellant's claims. "In assessing whether

---

[25] Appellate Exhibit XIV at 1.

[26] R. at 242.

[27] Appellant's Brief at 13; *United States v. Fahey*, No. 202200047, 2023 CCA LEXIS 18 (N-M Ct. Crim. App. Jan. 20, 2023).

[28] Appellant's Brief at 17.

[29] Appellant's Brief at 18.

sentences are highly disparate, 'adjudged sentences are used because there are several intervening and independent factors between trial and appeal—including discretionary grants of clemency and limits from pretrial agreements—that might properly create the disparity in what are otherwise closely related cases.'"[30] Military commanders have broad discretion to decide how dispose of courts-martial when entering in to plea agreements.[31]

Not only did Appellant and LCpl Fahey separately enter into different plea agreements at different times and under different circumstances, but they did so with different convening authorities—each independently setting a sentencing landscape that permitted the possibility that their sentences of confinement could be identical. Similarly, two different military judges independently adjudged their sentences, with Appellant's military judge having much broader discretion in setting the term of confinement. Having heard Appellant's providence inquiry, considered the stipulation of fact and evidence in aggravation, extenuation, and mitigation, Appellant's military judge adjudged the maximum term available—which happened to match that of LCpl Fahey. None of these factors weigh in favor of Appellant's arguments of inequity or unfairness. Too many variables contributed to these determinations, and nothing in the record directs us otherwise.

Finally, Appellant's punishment was the "predictable result of a [plea agreement] that he negotiated and voluntarily entered into with the convening authority."[32] Appellant voluntarily chose to plead guilty in accordance with the specific terms of an agreement he freely negotiated. As we have previously held, "we generally refrain from second guessing or comparing a sentence that flows from a lawful pretrial agreement."[33]

We find Appellant's claim to be without merit.

---

[30] *Roache*, No. 202200128, 2023 CCA LEXIS 475, at *9 (quoting *United States v. Roach*, 69 M.J. 17, 21 (C.A.A.F. 2010)).

[31] RCM 705(d); see *Lacy*, 50 M.J. at 287.

[32] *United States v. Bocage*, No. 202000206, 2022 CCA LEXIS 311, *7 (N-M Ct. Crim. App. May 25, 2022).

[33] *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172, *7 (N-M. Ct. Crim. App. Mar. 22, 2016) (unpublished).

**B. Appellant's Constitutional Challenge to Article 120b, UCMJ, Fails.**

Appellant argues that Article 120b, UCMJ, "unconstitutionally imposed strict liability on [him] … by not requiring the Government to prove, at minimum, that [Appellant] acted recklessly with regard to Ms. Romeo's age being under sixteen years old."[34] Appellant's argument relied heavily on *United States v. Gifford,* in which the Court of Appeals for the Armed Forces [CAAF] held that the Government was required to prove that an accused charged with providing alcohol to minors in violation of a lawful general order must have acted with recklessness in doing so.[35] Appellant's reliance on *Gifford* is misplaced.

When determining a question of law, such as whether a mens rea requirement applies to a punitive article of the UCMJ, this court employs a de novo standard of review.[36] In doing so, we invoke the traditional rules of statutory construction.[37] Our superior court has held that if the Government is not required to prove that an accused had knowledge of the facts that make his or her actions criminal in order to secure a conviction, then the underlying crime is properly deemed a strict liability offense.[38]

In *Gifford,* the general order in question prohibited providing alcohol to persons under 21 years of age and did not contain a mens rea required to make the act unlawful. Because it was silent as to the mens rea requirement, the CAAF first sought to "determine whether a mens rea requirement applie[d] to the general order at issue."[39] The CAAF explained that, where a statute is silent as to mens rea, a mens rea element may still be inferred and that "an 'indication of congressional intent … is required to dispense with *mens rea.*'"[40]

Here, Appellant asserts that Article 120b, UCMJ, does not expressly include a mens rea and thus the Government was required to prove that he at least acted recklessly with regard to Ms. Romeo's age.

---

[34] Appellant's Brief at 21.

[35] *United States v. Gifford*, 75 M.J. 140, 146 (C.A.A.F. 2016).

[36] *United States v. Serianne*, 69 M.J. 8, 10 (C.A.A.F. 2010).

[37] *Gifford*, 75 M.J. at 142 (citing *United States v. Estrada*, 69 M.J. 45, 47 (C.A.A.F. 2010)).

[38] *Id.*

[39] *Id.*

[40] *Id.* at 143 (quoting *Staples v. United States*, 511 U.S. 600, 606 (1994)).

We first examine the text of the statute. Article 120b(b), UCMJ, provides that "[a]ny person subject to this chapter who commits a sexual act upon a child who has attained the age of 12 years is guilty of sexual assault of a child and shall be punished as a court-martial may direct."[41] Unfortunately, this is where Appellant ends his analysis. In so doing, he omits a key part of the statute: "In a prosecution under this section, *it need not be proven that the accused knew that the other person engaging in the sexual act or lewd act had not attained the age of 16 years*, but it is a defense in a prosecution under subsection (b) (sexual assault of a child) […] which the accused must prove beyond a preponderance of the evidence, that the accused reasonably believed that the child had attained the age of 16 years, if the child had in fact attained at least the age of 12 years."[42]

Appellant's challenge to the statute fails. *Gifford* operates to determine whether—and what—mens rea is required where a statute or regulation is *silent*. By clear contrast, Article 120b, UCMJ, contains an express "indication of congressional intent" in the plain text of the statute, in compliance with Supreme Court requirements.[43] Additionally, Appellant's reliance on *Gifford* is unavailing in this context because *Gifford* made clear that its holding should not be interpreted to apply to sexual offenses involving children.[44]

This Court has previously stated that Article 120b, UCMJ, makes punishable the commission of a sexual act upon a child over 12 years of age but under 16 years of age as a strict liability offense.[45] "This strict liability (absent a reasonable mistake of fact as to the child's age) acknowledges the impossibility of consent in such situations, placing the burden on the adult involved to refrain from sexual activity with the child."[46] Contrary to Appellant's claims, Article

---

[41] 10. U.S.C. 920b(b).

[42] 10 U.S.C. 920b(d)(2) (emphasis added); see R.C.M. 916(j)(2).

[43] *Staples*, 511 U.S. at 606. ("Relying on the strength of the traditional rule, we have stated that offenses that require no mens rea generally are disfavored, …and have suggested that some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime.")

[44] *Gifford*, 75 M.J. at 144 n. 6; *see United States v. Haverty*, 76 M.J. 199, 205 n. 9 (C.A.A.F. 2017) (reiterating that its holding in *Gifford* "does not disturb statutory law and [CAAF] precedent regarding offenses for which lack of knowledge cannot be a defense (e.g., the age of a victim in a sexual offense involving children)").

[45] *United States v. Lotz*, No. NMCCA 201400304, 2015 CCA LEXIS 39, *5 (N-M Ct. Crim. App. Feb. 10, 2015).

[46] *Id.*

120b, UCMJ, does in fact contain a clear expression of congressional intent that the offense be a strict liability offense. The CAAF, as well as the Supreme Court, has recognized that—although generally disfavored—strict liability offenses are proper where Congress expresses its intent that an offense be treated as such. Here, the intent of Congress is clear. Therefore, we find Appellant's claim to be without merit.

**C. The Military Judge did not Abuse his Discretion by Accepting Appellant's Guilty Plea.**

We review a military judge's decision to accept a guilty plea for an abuse of discretion.[47] It is an abuse of discretion for a military judge to accept a guilty plea if the acceptance is based on an erroneous view of the law.[48] "The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea."[49] "The factual predicate is sufficiently established if 'the factual circumstances as revealed by the accused himself objectively support that plea.'"[50] A reviewing appellate court may only reject a guilty plea if there is a substantial basis in law or fact to question the plea.[51] We review questions of law arising from guilty pleas de novo.[52]

To be guilty of sexual assault of a child who has attained the age of 12 years, an accused must have committed a sexual act upon a child who has attained the age of 12 years but not attained the age of 16 years.[53] It is an affirmative

---

[47] *United States v. Hiser,* 82 M.J. 60, 64 (C.A.A.F. 2022).

[48] *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012). *See also United States v. Simpson*, 77 M.J. 279, 282 (C.A.A.F. 2018) (citation omitted).

[49] Rules for Court-Martial [R.C.M.] 910(e).

[50] *United States v. Faircloth*, 45 M.J. 172, 174 (1996) (quoting *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1980)).

[51] *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)).

[52] *Id.*

[53] Manual for Courts-Martial, United States (2019 ed.) [MCM], pt. IV, para. 62(b)(2).

defense to prove, by a preponderance of the evidence, "that the accused reasonably believed that the child had attained the age of 16 years, if the child had in fact attained at least the age of 12 years."[54]

Appellant argues that the military judge abused his discretion by accepting his guilty pleas despite "an abundance of evidence, whether documentary or testimonial, which indicated [Appellant's] acts upon which he was convicted were committed with an honest and reasonable mistake of fact."[55] We disagree.

In making his determination to accept or reject Appellant's pleas, the military judge first relied upon Appellant's stipulation of fact. Before even considering the stipulation of fact, the military judge informed Appellant about its nature and purpose, stating "a stipulation of fact is an agreement among the trial counsel, your defense counsel, and you that the contents of this stipulation are true, and if entered into evidence, are uncontradicted facts in this case."[56] He advised that it would be used in two ways: "First, I will use it to determine if you are guilty of the offense to which you pled guilty; second, I will use it to determine an appropriate sentence for you."[57] Receiving Appellant's affirmative acknowledgement of these uses and verifying that Appellant voluntarily entered into the stipulation of fact, the military judge then cautioned Appellant about the need for the stipulation of fact to be truthful: "Lance Corporal Armao, a stipulation of fact ordinarily cannot be contradicted. If it should be contradicted after I have accepted your guilty plea, I will reopen this inquiry. You should, therefore, let me know if there is anything you disagree with or feel is untrue."[58]

Receiving confirmation that Appellant understood this, the military judge then instructed Appellant to read the stipulation of fact one more time. When finished, the military judge led the following colloquy:

> MJ: Is everything in the stipulation true?
>
> ACC: Yes, sir.
>
> MJ: Is there anything in the stipulation that you do not wish to admit is true?

---

[54] 10 U.S.C. § 920b(d)(2).

[55] Appellant's Brief at 31.

[56] R. at 94.

[57] *Id.*

[58] R. at 94-95.

ACC: No, sir.

MJ: Do you agree under oath that the matters contained in the stipulation are true and correct to the best of your knowledge and belief?

ACC: Yes, sir.[59]

Finally, with no objection from trial defense counsel, the military judge admitted the stipulation of fact into evidence as a prosecution exhibit.[60]

In several paragraphs within the stipulation of fact, Appellant admitted to having reasons to doubt that Miss Romeo was old enough to engage in sexual acts. For example, on 25 May 2021, upon seeing nude images of the three girls and being informed that they were real girls, Appellant "expressed doubt as to the age of the girls. LCpl [Hotel] convinced [Appellant] that the girls were old enough to have sex because the pictures looked like they were taken in a barracks bathroom."[61] The next day, however, "LCpl [Hotel] expressed his concerns to [Appellant], informing [Appellant] that LCpl [Hotel] did not know what ages the girls were and that his deduction based on the background of the pictures was not a solid way to tell how old the girls actually were. LCpl [Hotel] told [Appellant] that [Appellant] should not meet with the girls."[62] Additionally, in the stipulation of fact, Appellant admitted that when they were discussing who the girls were on 25 May 2021, "LCpl Roache told [Appellant] that they might be military brats and were the girls he had met on Instagram via the 'summer challenge.' Lance Corporal Roache also told [Appellant] and LCpl Fahey that [Miss Pete] said she was 13 and that [Miss Rose] and [Miss Romeo] were likely the same age."[63] Finally, and most notably, Appellant admitted that upon meeting Miss Romeo for the first time on 27 May 2021, "[Appellant] noticed that Miss Romeo looked younger than she had appeared in her pictures."[64]

Informed by these uncontroverted facts, the military judge then turned to the providence inquiry to ensure that Appellant was, in fact, guilty of the two

---

[59] R. at 95.

[60] *See* Pros. Ex. 2.

[61] *Id.*

[62] *Id.* at 3.

[63] *Id.*

[64] *Id.* at 4.

specifications to which he had pleaded guilty. He twice instructed Appellant about the mistake-of-fact defense.[65] Although Appellant asserted that he had doubts about the age of Miss Romeo, he stated, under oath, that he had a "gut feeling" she was a child.[66] The military judge expressly asked Appellant if he had "an honest and reasonable mistake as to [Miss Romeo's] age," to which Appellant responded that he "did not have a reasonable mistake as to her age."[67] These assertions, coupled with the stipulation of fact, were sufficient for the military judge to accept the guilty plea and reach findings in the case.

Nonetheless, immediately following trial defense counsel's sentencing argument, which re-raised in the mind of the military judge the question of mistake of fact, the military judge reopened the providence inquiry to specifically address this question. Here, Appellant asserted he did not exercise the due care that required him to ask Miss Romeo how old she was when he had doubts as to her age—doubts raised not only because Appellant believed Miss Romeo looked younger in person than in the images he had seen of her, but also because of: (1) statements to LCpl Fahey agreeing he would engage in sexual acts even if the girls were 12 years old; (2) statements by LCpl Roache that Miss Romeo's friend said she was 13 years old; and, (3) statements by LCpl Hotel warning Appellant against meeting up with the girls because they were too young.[68] In light of these statements by Appellant, and after reaffirming Appellant's desire to be bound by the stipulation of fact, the military judge ended the re-opened providence inquiry and proceeded to deliberation and announcement of sentence.[69]

We find nothing in the record showing the military judge's decision to accept Appellant's guilty pleas was an abuse of discretion. He clearly made a thorough and detailed inquiry of Appellant to satisfy that there was a factual basis for the pleas. He exhaustively questioned Appellant about the potential defense of mistake of fact as to Miss Romeo's age, which Appellant himself clearly ruled out. And the military judge re-opened his inquiry to ensure Appellant's trial defense counsel had not argued or implied that such a defense

---

[65] R. at 98-99; R. at 154.

[66] R. 116-17, 129-131, 145, 155.

[67] R. at 156.

[68] R. at 236-37.

[69] R. at 240.

existed. In the end, we find no substantial basis in law or fact to question Appellant's guilty pleas and therefore conclude that the military judge did not abuse his discretion in accepting them.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[70]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[70] Articles 59 & 66, UCMJ.